**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **NUCOR CORPORATION** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Misc. Action No. _____** |
| **v.** | ) | |
| | ) | **2:06-cv-02972-DCN** |
| **JOHN BELL and SEVERCORR, LLC** | ) | **Pending in the United States** |
| | ) | **District Court for the District of** |
| **Defendants.** | ) | **South Carolina** |

## MOTION TO QUASH

Pursuant to Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure, Nucor Corporation ("Nucor"), by and through its undersigned counsel, submits this Motion to Quash the subpoenas served by Defendants on the University of Maryland (the "University") and Peter Morici, Ph.D. ("Dr. Morici") because the subpoenas violate the Scheduling Order of the underlying lawsuit.

WHEREFORE, for the reasons stated herein, and the accompanying Memorandum of Points and Authorities in Support, Nucor respectfully requests that the Court issue an Order granting its Motion to Quash with respect to all subpoenas issued to Dr. Morici and the University of Maryland in connection with this lawsuit; and (2) award any other relief as it deems just and proper.

Dated: April 18, 2008

Respectfully submitted,

**MCGUIREWOODS LLP**
1750 Tysons Boulevard
Suite 1800, Tysons Corner
McLean, VA 22102
Tel:  (703) 712-5000
Fax:  (703) 712-5220
E-mail:  kdeturris@mcguirewoods.com

_____
Kevin F. X. De Turris (D.C. Bar No. 491708)

*Attorney for Nucor Corporation*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing Motion to Quash was served upon the following counsel by first class mail, postage prepaid, this 18th day of April, 2008, at the following addresses:

Tarek Abdalla, Esquire
Reed Smith LLP
436 Sixth Ave.
Pittsburgh, PA 15219

Patricia Dodge
Meyer Unkovic & Scott LLP
1300 Oliver Building
Pittsburgh, PA 15222

Greg Horton, Esquire
Buist Moore Smythe McGee
P.O. Box 999
Charleston, SC 29402

J. Walker Coleman, IV, Esquire
Parker, Poe, Adams & Bernstein LLP
200 Meeting Street, Suite 301
Charleston, South Carolina 29401

_____
Kevin F. X. De Turris
**MCGUIREWOODS LLP**
1750 Tysons Boulevard, Suite 1800
McLean, Virginia  22102
Tel:  (703) 712-5000
Fax:  (703) 712-5050
Email:  kdeturris@mcguirewoods.com

*Attorney for Nucor Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **NUCOR CORPORATION** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Misc. Action No. _____** |
| **v.** | ) | |
| | ) | **2:06-cv-02972-DCN** |
| **JOHN BELL and SEVERCORR, LLC** | ) | **Pending in the United States** |
| | ) | **District Court for the District of** |
| **Defendants.** | ) | **South Carolina** |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT NUCOR'S OF MOTION TO QUASH

Pursuant to Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure, Nucor Corporation ("Nucor"), by and through its undersigned counsel, submits this Memorandum of Points and Authorities in Support of Nucor's Motion to Quash the subpoenas served by Defendants on the University of Maryland (the "University") and Peter Morici, Ph.D. ("Dr. Morici"), and states the following:

1.    On March 31, 2008, Defendants for the first time sent to counsel for Nucor a copy of a subpoena directed to the University (the "First University Subpoena") in connection with a case styled *Nucor Corporation v. John Bell and SeverCorr, LLC*, (the "South Carolina Action") which is pending in the district court for the District of South Carolina, Civil Action No. 2:06-2972-DCN.  The First University Subpoena called for a production of documents on March 27, 2008, four days *prior to* Plaintiff's counsel receiving its *first* notice of the subpoena.  As Plaintiff was not provided proper notice of the subpoena in violation of the Rule 45(b)(1) of the Federal Rules of Civil Procedure, the subpoena was improper and void.

2.      By that same letter of March 31, 2008, Defendants for the first time sent to counsel for Nucor a copy of a subpoena directed to Dr. Morici (the "First Morici Subpoena") in connection with the South Carolina Action.  As with the First University Subpoena, the First Morici Subpoena called for a production of documents on March 27, 2008, four days *prior to* Plaintiff's counsel receiving its *first* notice of the subpoena.  As Plaintiff was not provided proper notice of the subpoena in violation of the Rule 45(b)(1) of the Federal Rules of Civil Procedure, the subpoena was improper and void.  A true and correct copy of Defendants' counsel's March 31, 2008 letter and the First University Subpoena and the First Morici Subpoena is attached hereto as Exhibit A.

3.      The underlying action was brought by Nucor against SeverCorr and John Bell, an employee of SeverCorr (collectively, "Defendants").  In that case, Nucor alleges, among other things, that Bell, while an employee of Nucor at its plant located in Berkeley County, South Carolina ("Nucor-Berkeley"), took hundreds of Nucor documents containing Nucor's trade secrets and confidential information off of Nucor's computer system.  Many of documents Bell took related to Nucor's secret processes for the production of ultra low carbon ("ULC") and interstitial free ("IF") steel at Nucor Berkeley.  Bell took these documents in an effort to help jump-start SeverCorr's start-up steel plant in Columbus, Mississippi in its quest to make IF/ULC steel.  Through Bell and other Nucor employees that Defendants unlawfully pirated since Bell's departure from Nucor, SeverCorr and Bell have used, and are continuing to use, this information to, among other things, (1) immediately implement and utilize Nucor-Berkeley's IF/ULC manufacturing processes without incurring the years of trial and error and substantial costs incurred by Nucor, and (2) lure away those Nucor-Berkeley employees that were instrumental in

developing and performing these manufacturing processes.  A true and correct copy of Nucor's Amended Complaint and Motion for Preliminary Injunction is attached as Exhibit B.

4.    On February 19, 2008, the District Court of South Carolina entered a Scheduling Order in the South Carolina Action, which is attached as Exhibit C.  Under the terms of the Scheduling Order, all fact discovery "shall be completed no later than <u>April 4, 2008</u> . . . . [and] all discovery requests shall be served in time for the responses thereto to be served by this deadline."

5.    Realizing the First University Subpoena was improper and void, Defendants on April 3, 2008 directed another document subpoena to the University, under which the University was commanded to produce documents on or before April 17, 2008, almost two weeks *after* the discovery deadline (the "Second University Subpoena").  On April 14, 2008, counsel for the University, Denise Andrews, objected to the Second University Subpoena by way of letter attached as Exhibit D.

6.    Also on April 4, 2008, the last day of the discovery period, Defendants directed another subpoena on Dr. Morici (the "Second Morici Subpoena"), again admitting the invalidity of the First Morici Subpoena.  This Second Morici Subpoena to Dr. Morici purports to commanded production of eight separate categories of documents on or before April 19, 2008. On April 10, 2008, Counsel for Dr. Morici, Thomas W. Kirby, objected to the Second Morici Subpoena by way of letter attached as Exhibit E.

7.    On April 7, 2008, three days *after* the deadline to complete discovery, Defendants filed a Motion for Enlargement of Time in the South Carolina Action seeking a retroactive extension of the discovery deadline so as to allow Dr. Morici and the University time to respond to the subpoenas.  In so requesting, Defendants offer no explanation for their untimely discovery.

8.     Nucor has filed an Opposition to Defendant's Motion for an Enlargement of Time, attached as Exhibit F, and has filed a Motion for Protective Order, attached as Exhibit G, seeking the issuance of a protective order to prohibit Defendants from pursuing unauthorized and burdensome discovery.

9.     The Second Morici Subpoena and the Second University Subpoena are a deliberate attempt to circumvent the Scheduling Order in the South Carolina Action, which Order governs all discovery, including subpoenas.  Fed. R. Civ. P. 26(a)(5) (instructing that parties may obtain "discovery" through, among other methods, the production of documents under Rule 45); *Marvin Lumber and Cedar Co. v. PPG Industries, Inc.*, 177 F.R.D. 443, 443-44 (D. Minn. 1997) (recognizing that the definition of "discovery" in Rule 26 encompasses subpoenas); *Rice v. United States*, 164 F.R.D. 556, 559 (N.D. Okl. 1995) ("Thus, the better reasoned view is that the Rule 45 subpoenas duces tecum . . . are a form of discovery and, therefore, are subject to the Court's discovery deadline).

10.     This Court should quash the subpoenas issued to the University and Dr. Morici because the subpoenas violate the Scheduling Order in the South Carolina Action.  *Rice v. United States*, 164 F.R.D. 556, 558 (N.D. Okl. 1995) (quashing subpoenas as untimely under court's case management order); *McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 588 (W.D.N.Y. 1995) (quashing subpoena to third party served after deadline for discovery); *Garvin v. Southern States Insurance Exchange Co.*, No. 1:04cv73, 2007 WL 2463282, at *5 (N.D. W.Va. Aug. 28, 2007) (quashing "out-of-time" subpoena); *Surbella v. Foley*, No. 2:05-cv-0758, 2006 WL 3007429, at *1-2 (S.D. Ohio Oct. 20, 2006) (quashing subpoena that violated discovery deadline); *Minnesota Supply Co. v. The Raymond Corp.*, No. 99-832, 2002 WL 31898162, at *2 (D. Minn. Dec. 27, 2002) (affirming motion to quash where subpoenas were

served outside the discovery deadline); *Four M. Corp. v. Guiliano*, No. 89 Civ. 5275, 1991 WL 44840, at *1 (S.D.N.Y. Mar. 27, 1991) (quashing subpoenas to third parties because defendant failed to seek the discovery during the discovery period).

11.    For all of the foregoing reasons, Nucor respectfully requests that the Court issue an Order granting its Motion to Quash with respect to all subpoenas issued to Dr. Morici and the University of Maryland in connection with this lawsuit.

Dated: April 18, 2008

Respectfully submitted,

**MCGUIREWOODS LLP**
1750 Tysons Boulevard
Suite 1800, Tysons Corner
McLean, VA 22102
Tel:  (703) 712-5000
Fax:  (703) 712-5220
E-mail:  kdeturris@mcguirewoods.com

_____
Kevin F. X. De Turris (D.C. Bar No. 491708)

*Attorney for Nucor Corporation*

## <u>CERTIFICATE OF SERVICE</u>

       The undersigned hereby certifies that a true and correct copy of the foregoing Memorandum in Support of Motion to Quash was served upon the following counsel by first class mail, postage prepaid, this 18th day of April, 2008, at the following addresses:

Tarek Abdalla, Esquire
Reed Smith LLP
436 Sixth Ave.
Pittsburgh, PA 15219

Patricia Dodge
Meyer Unkovic & Scott LLP
1300 Oliver Building
Pittsburgh, PA 15222

Greg Horton, Esquire
Buist Moore Smythe McGee
P.O. Box 999
Charleston, SC 29402

J. Walker Coleman, IV, Esquire
Parker, Poe, Adams & Bernstein LLP
200 Meeting Street, Suite 301
Charleston, South Carolina 29401

_____

Kevin F. X. De Turris
**MCGUIREWOODS LLP**
1750 Tysons Boulevard, Suite 1800
McLean, Virginia  22102
Tel:  (703) 712-5000
Fax:  (703) 712-5050
Email:  kdeturris@mcguirewoods.com

*Attorney for Nucor Corporation*

# EXHIBIT A

**Defendants' counsel's March 31, 2008 letter and First University Subpoena and First Morici Subpoena**

# Buist · Moore · Smythe · McGee · P.A.

March 31, 2008

**Greg Horton, Esquire**
**Attorney at Law**
ghorton@buistmoore.com
Direct Dial: 843-720-4625

**VIA E-MAIL: walkercoleman@parkerpoe.com; ericwelsh@parkerpoe.com**
**& U. S. Mail:**

J. Walker Coleman, IV, Esquire
Eric D. Welsh, Esquire
Parker Poe Adams & Bernstein, LLP
200 Meeting Street, Suite 301
Charleston, SC 29401

RE:     Nucor Corp. v. John Bell and SeverCorr, LLC
        C/A # 2:06-CV-02972-DCN
        BMSM File: 13528.0000

Dear Walker & Eric:

        I am re-serving you with the subpoenas to Peter Morici, Ph.D., and the University of Maryland which were originally served via U.S. Mail in conjunction with Defendants' Responses to Nucor's Ninth Request for Production on March 11, 2008.

        Thank you for your understanding on this issue. We apologize for any inconvenience this may have caused. Please call me if you have any questions.

                                            Respectfully,

                                            Greg Horton

LGH/jrd

Enclosures as stated:

cc:     Tarek F. Abdalla, Esquire [tabdalla@reedsmith.com]
        Randy Lehner, Esquire [rlehnder@reedsmith.com]
        William C. Cleveland, Esquire
        Joseph Rodkey, Esquire [jrodkey@reedsmith.com]

AO88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

NORTHERN _____ DISTRICT OF _____ MARYLAND

NUCOR CORPORATION,

V.

JOHN BELL and SEVERCORR, LLC

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  2:06-cv-02972-DCN

TO:    University of Maryland
       3413 Van Munching Hall
       College Park, MD 20742-1815
       301-445-2740

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

PLEASE SEE ATTACHED EXHIBIT A

| PLACE    BUIST MOORE SMYTHE McGEE P.A., 5 Exchange Street, Charleston, S.C. 29402-0999 | DATE AND TIME  3/27/2008 5:00 pm |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)   Greg Horton [Fed. ID 7103], Attorney for Defendants | DATE  3/10/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
BUIST MOORE SMYTHE McGEE P.A., 5 Exchange Street, Charleston, S.C. 29402-0999
ghorton@buistmoore.com; (843) 720-4606/4625

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                           DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT "A"

### UNIVERSITY OF MARYLAND
3413 Van Munching Hall
College Park, MD  20742-1815

The Definitions and Instructions set forth below shall govern the following Documents Requested pursuant to the attached Subpoena Duces Tecum.

### DEFINITIONS AND INSTRUCTIONS

1.      The term "person" as used herein shall mean natural persons, proprietorships, corporations, public corporations, municipal corporations, the federal government, state governments, local governments, other governmental agencies, political subdivisions, partnerships, joint ventures, groups, trusts, associations or organizations or any other entity.

2.      "Document" as used herein shall include, without limitation, writings, drawings, graphs, charts, photographs, photo records, and other data compilations from which information can be obtained, translated, if necessary, by you through detection devices into reasonably usable form, and also means information or files contained or retained on any electronic device, including hand held, laptop, desktop and home computer systems, floppy disks, CD-ROMs, Zip disks/drives, and/or any other computerized storage devices, whether or not those files have previously been converted to hard-copy format or not, and the original and all drafts, outlines, proposals, and copies of any such matter (whether or not actually used) of all kinds and descriptions, however, produced or reproduced, whether sent or received or neither, regardless of whether designated "confidential," "privileged," or otherwise to which you have access or knowledge including, without limitation, all of the following: correspondence, papers, books, computer discs, electronically stored data in any form, email, accounts, photographs, agreements,

{01159096.}

contracts, memoranda, advertising materials, letters, telegrams, objects, reports, records, transcripts, studies, notes, notations, working papers, intra-office communications, charts, minutes, index sheets, computer software and printouts, checks, check stubs, delivery tickets, bills of lading, invoices, recordings of telephone or other conversations, communications, occurrences, interviews and conferences, sound and video recording, and any other material upon which information can be stored and retrieved, including all written, recorded, electronically stored, transcribed, punched, taped, filmed and graphic matter.

3.       Whenever a reference herein is made to any person, firm, corporation, partnership, association or other entity, such reference shall also mean any of such person's present or former spouses, officers, employees, agents, directors, or shareholders, or any of its present or former subsidiaries, parent corporation or predecessor or affiliate corporations, partnerships, trusts, associations or any other entities in which such person has or has had an interest, and any person, firm, partnership, corporation, independent contractor, broker or other entity acting on its behalf, and it shall also mean the person referred to acting jointly with any of the persons referred to in the paragraph.

4.       The terms "and" and "or" as used herein shall be both conjunctive and disjunctive.

5.       The terms "concerning" or "concerned" as used herein shall mean referred to, alluded to, related to, connected with, commencing on, in respect of, about, regarding, discussing, constituting, showing, describing, in support of, in substitution of, reflecting and analyzing.

6.      Unless the context indicates otherwise, the term "Nucor" refers to Nucor Corporation, and any of its past or present officers, directors, employees, agents, attorneys and predecessors-in-interest.

7.      Unless the context indicates otherwise, the term "You" and "Your" as used herein shall refer to you and any of your agents.

8.      Whenever these requests seek documents claimed by You to be privileged, You shall include a statement of the identity of such document, the fact of such claim of privilege and the basis for such claim of privilege. In identifying the document, You shall describe the document and state its author, its location, and the identity of the person or persons having custody or control over it.

9.      This discovery shall be continuing in nature, and You are required to serve supplemental answers and produce responsive documents as additional information is found or becomes available.

10.     The use of the singular form of any word includes the plural and vice-versa; and the use of any tense of any verb should be considered to include also within its meaning all other terms of the verb so used.

## DOCUMENTS REQUESTED

1.      For the period January 1, 2003 to the present, all documents concerning Nucor's involvement with the University of Maryland at College Park ("UM"), including all of UM's schools, colleges, and programs.

2.      For the period January 1, 2003 to the present, all documents concerning any communication between UM and Nucor, Nucor's lawyers or consultants, including, but not limited to any communication with Nucor's lawyers or consultants.

3.      For the period January 1, 2003 to the present, all documents concerning Nucor's financial support for UM, including, but not limited to, financial statements.

4.    For the period January 1, 2003 to the present, all documents concerning any money paid to UM by Nucor.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

NORTHERN          DISTRICT OF          MARYLAND

NUCOR CORPORATION,

V.

JOHN BELL and SEVERCORR, LLC

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 2:06-cv-02972-DCN

TO:   Peter Morici, Ph.D., Professor, Robert H. Smith
      School of Business, University of Maryland
      3413 Van Munching Hall, College Park, MD 20742-1815
      301-405-2136

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

PLEASE SEE ATTACHED EXHIBIT A

| PLACE   BUIST MOORE SMYTHE McGEE P.A., 5 Exchange Street, Charleston, S.C. 29402-0999 | DATE AND TIME   3/27/2008 5:00 pm |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)   Greg Horton [Fed. ID 7103], Attorney for Defendants | DATE   3/10/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
BUIST MOORE SMYTHE McGEE P.A., 5 Exchange Street, Charleston, S.C. 29402-0999
ghorton@buistmoore.com; (843) 720-4606/4625

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

|  | DATE | SIGNATURE OF SERVER |
|---|---|---|
| | | |
| | | ADDRESS OF SERVER |

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT "A"

Peter Morici, Ph.D.
Professor at Robert H. Smith School of Business
Logistics, Business and Public Policy
University of Maryland
3413 Van Munching Hall
College Park, MD 20742-1815

---

The Definitions and Instructions set forth below shall govern the following Documents Requested pursuant to the attached Subpoena Duces Tecum.

## DEFINITIONS AND INSTRUCTIONS

1.    The term "person" as used herein shall mean natural persons, proprietorships, corporations, public corporations, municipal corporations, the federal government, state governments, local governments, other governmental agencies, political subdivisions, partnerships, joint ventures, groups, trusts, associations or organizations or any other entity.

2.    "Document" as used herein shall include, without limitation, writings, drawings, graphs, charts, photographs, photo records, and other data compilations from which information can be obtained, translated, if necessary, by you through detection devices into reasonably usable form, and also means information or files contained or retained on any electronic device, including hand held, laptop, desktop and home computer systems, floppy disks, CD-ROMs, Zip disks/drives, and/or any other computerized storage devices, whether or not those files have previously been converted to hard-copy format or not, and the original and all drafts, outlines, proposals, and copies of any such matter (whether or not actually used) of all kinds and descriptions, however, produced or reproduced, whether sent or received or neither, regardless of whether designated "confidential," "privileged," or otherwise to which you have access or knowledge including, without limitation, all of the following: correspondence, papers, books,

{01159085.}

computer discs, electronically stored data in any form, email, accounts, photographs, agreements, contracts, memoranda, advertising materials, letters, telegrams, objects, reports, records, transcripts, studies, notes, notations, working papers, intra-office communications, charts, minutes, index sheets, computer software and printouts, checks, check stubs, delivery tickets, bills of lading, invoices, recordings of telephone or other conversations, communications, occurrences, interviews and conferences, sound and video recording, and any other material upon which information can be stored and retrieved, including all written, recorded, electronically stored, transcribed, punched, taped, filmed and graphic matter.

3.     Whenever a reference herein is made to any person, firm, corporation, partnership, association or other entity, such reference shall also mean any of such person's present or former spouses, officers, employees, agents, directors, or shareholders, or any of its present or former subsidiaries, parent corporation or predecessor or affiliate corporations, partnerships, trusts, associations or any other entities in which such person has or has had an interest, and any person, firm, partnership, corporation, independent contractor, broker or other entity acting on its behalf, and it shall also mean the person referred to acting jointly with any of the persons referred to in the paragraph.

4.     The terms "and" and "or" as used herein shall be both conjunctive and disjunctive.

5.     The terms "concerning" or "concerned" as used herein shall mean referred to, alluded to, related to, connected with, commencing on, in respect of, about, regarding, discussing, constituting, showing, describing, in support of, in substitution of, reflecting and analyzing.

6.     Unless the context indicates otherwise, the term "Nucor" refers to Nucor Corporation, and any of its past or present officers, directors, employees, agents, attorneys and predecessors-in-interest.

7.     Unless the context indicates otherwise, the term "you" and "your" as used herein shall refer to you and any of your agents.

8.     Whenever these requests seek documents claimed by you to be privileged, you shall include a statement of the identity of such document, the fact of such claim of privilege and the basis for such claim of privilege.  In identifying the document, you shall describe the document and state its author, its location, and the identity of the person or persons having custody or control over it.

9.     This discovery shall be continuing in nature, and you are required to serve supplemental answers and produce responsive documents as additional information is found or becomes available.

10.    The use of the singular form of any word includes the plural and vice-versa; and the use of any tense of any verb should be considered to include also within its meaning all other terms of the verb so used.

## DOCUMENTS REQUESTED

1.     All documents that you reviewed or consulted in reaching the opinions expressed in "The SteelCorr Project in Columbus, Mississippi:  An Economic Analysis" ("Report").

2.     From January 1, 2000, to the present, all documents concerning any communication between you and Nucor including, but not limited to any communication with Nucor's lawyers or consultants.

3.     All documents concerning any consulting you have done for Nucor from January 1, 2000 to the present.

4.     For the period, January 1, 2000 to the present, all documents concerning grants or funding you have received or requested from Nucor on behalf of yourself or any person.

{01159085.}

5.    All documents concerning lawsuits in which you have served as an expert for or provided reports for Nucor.

6.    For the period January 1, 2000 to the present, all documents concerning any money paid to you by Nucor.

7.    For the period January 1, 2000 to the present, all documents in your possession concerning Nucor's involvement in the Report.

8.    For the period January 1, 2000 to the present, all documents in your possession concerning financial contributions by Nucor to the University of Maryland at College Park, the Robert H. Smith School of Business, or any other institution or entity with which you are involved.

# EXHIBIT B

**Amended Verified Complaint and Motion for Preliminary Injunction**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| NUCOR CORPORATION, | ) | |
| | ) | **Case No. 2:06-cv-02972-PMD** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **AMENDED VERIFIED COMPLAINT** |
| | ) | **AND** |
| | ) | **MOTION FOR PRELIMINARY** |
| JOHN BELL and SEVERCORR, LLC, | ) | **INJUNCTION** |
| | ) | **(Jury Trial Demanded)** |
| Defendants. | ) | |
| | ) | |

NOW COMES the Plaintiff, Nucor Corporation ("Nucor"), complaining of Defendants John Bell ("Bell") and SeverCorr, LLC ("SeverCorr") and would respectfully show unto the Court as follows:

## PARTIES AND JURISDICTION

1.      Nucor is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Charlotte, North Carolina and with operations in Berkeley County, South Carolina.

2.      Upon information and belief, Bell is a resident and citizen of the State of South Carolina, Charleston County at 3234 Pignatelli Crescent, Mt. Pleasant, South Carolina.

3.      Upon information and belief, SeverCorr is a limited liability company organized under the laws of the State of Delaware, with offices located in Columbus, Mississippi.

## FACTUAL ALLEGATIONS

4.      Nucor is headquartered in Charlotte, North Carolina and manufactures steel products in the United States.  Through its affiliates, Nucor operates facilities in 17 states, employing over 11,500 persons.  Over the last decade, Nucor expanded its business by opening

up new facilities or acquiring operations in Alabama, Indiana, New York, North Carolina and South Carolina.

5.    Nucor manufactures carbon and alloy steel in bar, sheet and structural forms, steel joists and steel girders, steel deck, cold finished steel, steel fasteners and metal building systems.

6.    Nucor is known for, among other things, its strong emphasis on quality and technological leadership.

## BELL'S EMPLOYMENT WITH NUCOR

7.    For over 18 years, Bell was employed by Nucor in its facilities in various capacities. Nucor hired Bell in 1987 as a melt shop manager at Nucor-Yamato, a joint venture facility of Nucor. Bell was employed in that capacity until 1995 when he became melt shop manager for Nucor's mini-mill facility in Berkeley County, South Carolina ("Nucor-Berkeley").

8.    Bell was involved in the start-up of several Nucor facilities, including Nucor-Berkeley. In connection with those responsibilities, Bell was substantially involved in decisions made at Nucor regarding the design, layout and operation of these new facilities.

9.    Steel making today is a demanding business and requires advanced and efficient techniques and processes to produce sophisticated products to meet the demands of steel customers at the least cost possible in order to obtain profitability. Certain customers demand highly sophisticated products, including value-added steel, that can be made by only certain manufacturers. Mini-mills, such as those of Nucor, have certain manufacturing and cost savings advantages over integrated mills, but also have certain demands and requirements different from integrated mills that must be met through advancement of design and processes.

10.    In an effort to continue to maintain its technological advantage, Nucor, in May 2004, appointed Bell general manager of steelmaking technologies at Nucor. In that position, Bell was given greater responsibilities at Nucor including primary responsibility for supporting

2

and enhancing existing steelmaking operations throughout Nucor. In addition, Bell was involved in the development of steelmaking technologies. Bell also retained his prior duties and responsibilities as melt shop manager at Nucor-Berkeley.

11.    In his positions with Nucor, Bell became knowledgeable of substantially all of Nucor's operations.    Among other things, Bell became knowledgeable of Nucor's: manufacturing processes, procedures and specifications; plant design, specifications and layout; equipment design, specifications and layout; employee information and staffing needs; customer information, including specifications; technological processes for the production of steel products, including thin slab casting; steel product production speeds and quantities; production efficiencies; pricing, costs and other financial data; and research and development projects. In addition, Bell was directly involved in hiring and review processes of Nucor melt shop and some technical employees at the Berkeley facility and in that capacity became knowledgeable and learned of confidential information of Nucor concerning these employees, including their salaries, responsibilities, positions and abilities. All such information is unique and proprietary to Nucor and thus is treated as confidential at Nucor. Most of such information exists as a result of Nucor's substantial investment in its technology and processes.

12.    Bell, as part of his employment with Nucor, led numerous projects at Nucor for the development of new processes, technologies or techniques to improve Nucor's steelmaking capabilities, reduce costs and improve its final product for sale to Nucor's customers. Among other things, Bell was instrumental in creating processes and procedures for using a vacuum degasser in Nucor's Berkeley operations, the only mini-mill to successfully employ a vacuum degasser in the electric arc furnace ("EAF") steelmaking process. Nucor's process for use of the vacuum degasser was developed after considerable time and expense by Nucor, involving numerous efforts of trial and error, and following repeated attempts and failures. Bell is

3

knowledgeable not only of the successful process developed by Nucor, but also of the steps and course not to follow in use of the vacuum degasser, which knowledge has substantial value to Nucor.

13.    Bell also led a team in creating and devising procedures for reducing costs in the manufacture of sheet steel and developing new processes for making better surfaces in sheet steel in a mini-mill environment, including devising new manufacturing processes to improve quality with the CSP caster, one of the most difficult areas to properly operate and control in steelmaking.  Among other things, Bell worked directly with Nucor metallurgists for over a year to develop and refine a process of cooling molten steel more slowly to make steel less prone to surface cracking, which has been very costly to Nucor and is highly confidential and proprietary to Nucor.

14.    As part of his responsibilities at Nucor, Bell, for over three months, advised employees of Nucor's Castrip facility ("Castrip") in processes involving the manufacture of sheet steel through thin strip casting.  The Castrip facility employs new technology, some of which is patented to Nucor, and all of which involves manufacturing processes which are highly confidential and proprietary to Nucor.  Through his involvement at Castrip, Bell learned of confidential and proprietary information concerning the design and layout of the equipment at that facility, manufacturing processes, production costs, and steelmaking output and capacity, among other things, and assisted in developing new processes to improve production and efficiencies.

15.    Each of the projects that Bell led or otherwise assisted in at Nucor are proprietary to Nucor, result from Nucor's considerable expenditure of time, effort and money, and each gives Nucor a competitive advantage over other manufacturers of sheet steel, including manufacturers using electric arc furnaces.

4

CLT 1011684v3

16.     Thus, throughout his employment at Nucor, Bell was provided specialized training and opportunities in Nucor's specialized steelmaking which made him intimately knowledgeable about the substantial information and technologies set forth in paragraphs 11-15 above, which is confidential and proprietary to Nucor.  This information collectively constitutes Nucor's trade secrets ("Trade Secrets").

17.     Nucor takes reasonable steps to protect its Trade Secrets, including the use of confidentiality and non-disclosure agreements entered into between Nucor and its employees. Bell, during his employment with Nucor, entered into agreements for the protection of Nucor's Trade Secrets and other confidential and proprietary information.

### A.     The First Confidentiality Agreement

18.     In connection with his employment at Nucor, Bell entered an Agreement between Employee and Nucor Corporation for Non-Disclosure of Trade Secrets and Confidential Information by Employee and for the Assignment of Inventions by Employee, dated October 19, 1987 (the "First Confidentiality Agreement") (Exhibit A hereto).

19.     Under the terms of the First Confidentiality Agreement, Bell acknowledged and agreed not to disclose to any other person, or use to Nucor's detriment, any of Nucor's confidential information and trade secrets without the prior written consent of Nucor, and further agreed that his obligations under the First Confidentiality Agreement would continue after the termination of his employment with Nucor.  The Confidentiality Agreement provides in pertinent part:

> 1.     The trade secrets and confidential information of Nucor as used herein shall mean, among other things: *plant design, specifications and layout*; equipment design, specifications and layout; product design and specifications; *manufacturing processes, procedures and specifications*; data processing programs; *research and development projects*; marketing, pricing, cost and financial data . . .

5

2.    The relationship of employer and employee imposes a legal duty on EMPLOYEE *not to disclose to others or use* to EMPLOYEE'S advantage, to the detriment of NUCOR, any of NUCOR'S trade secrets or confidential information, while EMPLOYEE is employed by NUCOR *as well as after such employment ceases* and while such trade secrets and confidential information remain confidential.

**B.    The Second Confidentiality Agreement**

20.    In connection with Bell's employment as melt shop manager at Nucor-Berkeley, Bell entered into a second Agreement Between Employee and Nucor Corporation for Non-Disclosure of Trade Secrets and Confidential Information by Employee and for the Assignment of Inventions by Employee, dated November 23, 1999, which is identical to the First Confidentiality Agreement (the "Second Confidentiality Agreement") (Exhibit B hereto). As with the First Confidentiality Agreement, Bell acknowledged and agreed not to use or disclose any of Nucor's confidential information and trade secrets to any other parties without the prior written consent of Nucor.

21.    Bell agreed that his obligations of confidentiality and non-use under the Second Confidentiality Agreement continued after the termination of his employment with Nucor.

**C.    The Third Confidentiality Agreement**

22.    In October 2005, Bell entered into another agreement with Nucor, again acknowledging Nucor's confidential and trade secret information and agreeing not to use or disclose such information. Under the terms of the Employee Confidential Information and Assignment Agreement between Bell and Nucor, dated October 29, 2005 (the "Third Confidentiality Agreement") (Exhibit C hereto) (collectively with the prior confidentiality agreements, the "Confidentiality Agreements"), Bell agreed for a minimum of 20 years not to use or disclose Nucor's confidential information, including information concerning:

"[A]ll inventions and all other business, technical and financial information **(including, without limitation, the identity of and information relating to customers or employees)** I develop,

6

learn or obtain during the term of my employment that relate to (i) **the Company and its business**, (ii) the technological process for the production of flat steel products through thin strip casting, and (iii) all confidential information now or hereafter owned by Castrip, LLC."

23.    Bell further agreed that following termination of his employment with Nucor, he would:

(a) take all reasonable steps and do all things that may be reasonably required by Company from time to time, to keep the Confidential Information, and all documents, materials, media and all other things recording, containing, setting out or making reference to any Confidential Information, under my effective control; (b) promptly notify Company in the event that I become aware of any unauthorized access to, or use or disclosure of, any Confidential Information; and (c) not use, copy or reproduce, nor cause, permit or allow any other person to use, copy or reproduce, any document, material, medium or any other thing, recording, containing, setting out or making reference to any Confidential Information unless otherwise in accordance with this Agreement.

24.    Bell further entered into a non-solicitation agreement with Nucor pursuant to which Bell agreed that for a period of 1 year following his termination, he would not "encourage or solicit any employee or consultant of [Nucor] to leave [Nucor] for any reason (except for the bona fide firing of Company personnel within the scope of my employment)."

25.    The Third Confidentiality Agreement is, by agreement, governed by the laws of the State of Indiana.

## SEVERCORR

26.    Upon information and belief, SeverCorr, organized in 2004, is a new steel company building a single facility outside of Columbus, Mississippi.

27.    Upon information and belief, SeverCorr's steel facility is intended to be a "next generation steel mill," utilizing all of the latest in technology by blending "new technology with a new way of doing business." SeverCorr's steel mill, which will be a mini-mill similar to

7

Nucor's Berkeley facility, will include a "state of the art melt shop," a thin slab caster, a hot mill, cold mill, and a hot-dip galvanizing line.

28.    SeverCorr's melt shop in the new steel facility is intended to utilize an electric arc furnace with twin ladle metallurgy stations and twin-tank vacuum degassers.

29.    SeverCorr's hot mill in the new steel facility is intended to utilize a compact strip production (CSP) caster.

30.    On information and belief, SeverCorr's mill is designed and intended to manufacture high quality, flat-rolled steel for automotive and appliance applications, and to produce value-added steels.   SeverCorr's mill will be similar to, and a direct competitor of, Nucor.

31.    SeverCorr is currently constructing its steel mill in Columbus, Mississippi and hiring employees for the construction and start-up operations.

## BELL'S AND SEVERCORR'S MISAPPROPRIATION

32.    On information and belief, Bell met with representatives of SeverCorr sometime in or before March 2006 and discussed the possibility of Bell's employment with SeverCorr. Over this time period, SeverCorr conspired with Bell for Bell to take steps, while employed by Nucor, to obtain Nucor confidential information concerning its steelmaking operations, technologies, personnel, training and other confidential information that would be vitally important to a start-up mini-mill like SeverCorr.   In or around March 2006, Bell, with SeverCorr's knowledge and agreement, downloaded, copied and retained files, data and documents electronically maintained on the computer assigned to him at Nucor, including highly confidential and proprietary information concerning Nucor Berkeley's operations, production, processes, methodologies, training and personnel.  Bell's aforementioned downloading, copying and retaining of Nucor's files was without Nucor's knowledge or permission.  The Nucor

8

confidential information downloaded, copied and retained by Bell from Nucor's computer would be of tremendous value and benefit to a competitor of Nucor.

33.    Bell terminated his employment with Nucor on or about March 31, 2006.

34.    By letter dated March 31, 2006, Nucor reminded Bell of his contractual and statutory obligations to Nucor not to use or disclose Nucor's confidential and proprietary information or solicit employees and consultants of Nucor to leave Nucor's employment for any reason (Exhibit D hereto).  Nucor also advised Bell in this letter, that given the nature of the confidential information disclosed to him at Nucor, and his knowledge and involvement with that confidential information during his 18 years of employment with Nucor, any employment of Bell in a similar capacity with another steel manufacturing company would inevitably disclose Nucor's Confidential Information and Trade Secrets.  Bell never objected to this letter.

35.    Nucor conducted an exit interview with Bell on April 1, 2006.

36.    In his exit interview, Nucor again advised and reminded Bell of his confidentiality obligations owed to Nucor, including his "continuing obligation not to disclose or use confidential or proprietary information of Nucor, including but not limited to, information concerning Nucor's processes, techniques, methodologies, formulations, proprietary technologies, costs, pricing, customer requirements and specifications, employee relationships and compensation," and that Nucor considers "its longstanding relationship with its employees and customers to be important assets to the company and have been and will continue to be protected by Nucor."  Bell acknowledged in writing on April 1, 2006, having received such advice from Nucor without reservation or objection (Exhibit E hereto).

37.    Despite voluntarily executing the Confidentiality Agreements, the March 31, 2006 reminder letter to which Bell never objected, and Bell's written acknowledgment on April 1, 2006 that he received without objection a reminder from Nucor regarding his confidentiality

obligations to Nucor, Bell, in apparent blatant and willful disregard of such, continued to misappropriate Nucor's Trade Secrets and confidential information into April 2006, including, without limitation, transferring data, files and documents of Nucor reflecting Nucor's Trade Secrets and confidential information, to a USB memory device on or about April 3, 2006 (the "USB memory device"). In many cases, Bell deleted this information from the computer assigned to him at Nucor after otherwise copying or transferring such files and data for his own and SeverCorr's use.

### BELL'S EMPLOYMENT WITH SEVERCORR

38.    On or about March 31, 2006, SeverCorr hired Bell in the position of Executive Vice President and General Manager of Operations. On or about April 3, 2006, Bell became a member of SeverCorr. On information and belief, in his new position at SeverCorr, Bell will be responsible for, or have substantial involvement in, among other things: management of steel making processes; purchasing of raw materials and adoption of processes to minimize costs and maximize efficiencies; implementation of new technologies and processes for steel making; hiring and staffing decisions; decisions regarding plant and equipment selection, layout and design at SeverCorr's facility in Columbus, Mississippi; research and development; marketing and pricing; and customer specifications. Further, on information and belief, in light of the substantial similarities between SeverCorr's and Nucor's mills, including the use of the electric arc furnace, the vacuum degasser and the thin slab caster, and Bell's responsibilities at SeverCorr, Bell has used and disclosed, and/or will inevitably use and disclose, Nucor's Trade Secrets.

39.    On information and belief, Bell, on or about April 10, 2006, connected the USB memory device containing Nucor documents and information onto the computer assigned to him by SeverCorr (the "Bell-SeverCorr computer"). The Bell-SeverCorr computer has been linked to

10

the SeverCorr server for its computer system since April 2006. Bell transferred to the Bell-SeverCorr computer on or about April 10, 2006 documents and information related to Nucor that was contained on the USB memory device. In addition, Bell and SeverCorr, since April 10, 2006, have installed eight other USB memory devices on the Bell-SeverCorr computer.

40. In addition, on information and belief, Bell, while employed by SeverCorr, has solicited or encouraged several Nucor employees to resign from Nucor to accept employment at SeverCorr in violation of the his agreements with Nucor, including the Third Confidentiality Agreement.

41. More specifically, over the last several months, Bell solicited or encouraged Nucor employees, Max A. (Tony) Gurley, Barry Steel, Stanley Smith, John Campbell, and Mark Pole, to leave Nucor for employment at SeverCorr. In soliciting and encouraging these Nucor employees to leave Nucor, Bell used Nucor's Trade Secrets and confidential information and breached his contractual obligations owed to Nucor.

42. Upon information and belief, Bell continues to actively solicit and encourage other employees to leave Nucor for employment at SeverCorr.

### FIRST CAUSE OF ACTION
(Misappropriation of Trade Secrets)

43. Nucor restates and realleges each and every allegation in paragraphs 1 through 42 above.

44. Defendants' conduct as alleged in this Complaint constitutes actual and/or threatened misappropriation of trade secrets pursuant to South Carolina Trade Secrets Act, S.C. Code and Ann. §39-8-10 et. seq. Defendant Bell entered into the Confidentiality Agreements with Nucor pursuant to which he agreed not to disclose or use Nucor's confidential information concerning, among other things, plant design, product and equipment design and specifications,

11

manufacturing processes, research and development projects, marketing and pricing, costs and financial data, customer and employee information. The Confidentiality Agreements are valid and enforceable contracts.

45.    Bell has a duty not to disclose Nucor's Trade Secrets under the Confidentiality Agreements and SeverCorr has a duty not to use Nucor's Trade Secrets pursuant to S.C. Code §39-8-30.

46.    Bell, through his employment at Nucor as melt shop manager and general manager of steelmaking technologies, had access to and knowledge of Nucor's Trade Secrets, including without limitation: Nucor's manufacturing processes, procedures and specifications; steel production speeds and quantities; plant design, specifications and layout; equipment design specifications and layout; employee information, including salary, positions, responsibilities and abilities; customer information, including specifications; pricing, cost and financial data of Nucor; technological processes for the production of steel products, including thin slab casting; and research and development projects. This information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, the public or any other person who can obtain economic value from its disclosure or use, and is the subject of efforts by Nucor that are reasonable under the circumstances to maintain its secrecy, and constitutes trade secrets under S.C. Code Ann. §39-8-10.

47.    SeverCorr, through Bell's employment with it as a Executive Vice President and General Manager of Operations, plans to use and disclose, and has used or disclosed, Nucor's Trade Secrets in direct competition with Nucor causing irreparable harm to Nucor.

48.    Bell has misappropriated and used Nucor's trade secrets, including confidential information regarding Nucor's employees and other Trade Secret information, including information contained on Nucor's computer system, to Nucor's detriment and, through his

12

employment as Executive Vice President and General Manager of Operations at SeverCorr, and based on his prior improper conduct, will be unable to refrain from further using or disclosing Nucor's Trade Secrets, including confidential information regarding Nucor's plant and equipment design and layout, technological or manufacturing processes and projects in development, by virtue of the nature of his position at SeverCorr, and thus will cause irreparable harm to Nucor. SeverCorr, through Bell and otherwise, has misappropriated and used and will continue to misappropriate and use Nucor's Trade Secrets and will benefit at the expense of Nucor from the improper use of such Trade Secrets, including obtaining certain unfair advantages such as a head start in its operations by not having to experience the same expensive and time consuming trial and errors that Nucor experienced in, among other things, its use of vacuum degassers in the EAF steelmaking process.

49.    Upon information and belief, SeverCorr's employment of Bell has resulted, and will continue to result, in the threatened and/or actual misappropriation of Nucor's Trade Secrets through SeverCorr and Bell's use and disclosure of Nucor's Trade Secrets. Defendants' actions as alleged above, will be a continual cause of irreparable harm to Nucor unless SeverCorr and Bell are enjoined from using and/or disclosing Nucor's Trade Secrets, and SeverCorr is enjoined from employing Bell at SeverCorr as Executive Vice President and General Manager of Operations or in any other position to which Bell would have to disclose, or may inadvertently disclose, Nucor's Trade Secrets. If SeverCorr and Bell are not enjoined, Nucor will continue to suffer irreparable harm for which there is no adequate legal remedy. It will be impossible to determine the complete damage that Nucor will sustain from SeverCorr and Bell's use and disclosure of Nucor's Trade Secrets.

13

50.    SeverCorr and Bell's conduct constitutes threatened and/or actual misappropriation of Nucor's Trade Secrets for which Nucor is entitled to injunctive relief pursuant to S.C. Code Ann. §39-8-50 and the common law.

## SECOND CAUSE OF ACTION
(Breach of Contract)

51.    Nucor restates and realleges each and every allegation in paragraphs 1 through 50 above.

52.    Nucor has complied with its obligations under the Confidentiality Agreements.

53.    Bell, upon information and belief, used Nucor's Trade Secrets and confidential information to solicit and hire employees of Nucor for SeverCorr.

54.    Bell's use of Nucor's Trade Secrets and confidential information in soliciting and hiring employees of Nucor for SeverCorr violates and constitutes a material breach of Bell's contractual obligations under the Confidentiality Agreements not to use or disclose Nucor's Trade Secrets and confidential information following his employment with Nucor.

55.    In addition, Bells' use of Nucor's Trade Secrets and confidential information in soliciting and encouraging employees of Nucor to leave Nucor for SeverCorr violates Bell's obligations set forth in the Third Confidentiality Agreement not to solicit or encourage employees of Nucor to leave Nucor's employment for employment at SeverCorr. Bell's foregoing conduct constitutes a material breach of the Third Confidentiality Agreement.

56.    Bell's conduct above also constitutes a breach of the implied Covenant of Good Faith and Fair Dealing which exists in every contract, including the Confidentiality Agreements.

57.    Bell's conduct above constitutes material breaches of his contracts with Nucor, including without limitation the Third Confidentiality Agreement, has caused, and will continue

14

to cause irreparable harm to Nucor, and has further directly and approximately caused Nucor damages in an amount to be determined by the trier of fact.

## THIRD CAUSE OF ACTION
### (Breach of Duty of Loyalty)

58.    Nucor restates and realleges each and every allegation in Paragraphs 1 through 57 above

59.    Bell was employed by Nucor in a position of trust and responsibility as melt-shop manager of the Berkeley County plant and general manager of technology at Nucor.  In such capacities, Bell owed Nucor a duty of loyalty to act in Nucor's best interest at all times and not to engage in activities harmful or detrimental to Nucor.

60.    While employed by Nucor, Bell willfully and maliciously engaged in activity and conspired with SeverCorr to compete unfairly with Nucor while still employed by Nucor, without Nucor's knowledge or consent, including obtaining unauthorized access to, copying, and transferring for his and SeverCorr's use Nucor documents containing Trade Secrets and confidential information.

61.    Bell's breach of his duty of loyalty has caused Nucor to suffer irreparable harm and economic damage in an amount to be determined by the trier of fact.

## FOURTH CAUSE OF ACTION
### (Computer Fraud and Abuse)

62.    Nucor restates and realleges each and every allegation in paragraphs 1 through 61 above.

63.    Nucor's computer used by Bell while an employee of Nucor was used in interstate commerce and is thus a "protected computer" under 18 U.S.C. § 1030(e)(2)(B).

64.    Bell intentionally accessed Nucor's computer without authorization and, as a result of such access, consequent downloading and, in some cases, destruction, of Nucor's Trade

15

Secrets and confidential information therefrom, caused damage to Nucor and loss to Nucor in an amount of at least $5,000 over a one year period in violation of 18 U.S.C. § 1030(a)(5)(B).

65.    At the time of such downloading, Bell was acting as an agent of, and co-conspirator with, SeverCorr.

66.    Under 18 U.S.C. § 1030(g), Nucor is entitled to a judgment against Bell and SeverCorr for injunctive relief and economic damage to be determined by the trier of fact.

## FIFTH CAUSE OF ACTION
(Tortious Interference with Relations)

67.    Nucor restates and realleges each and every allegation in paragraphs 1 through 66 above.

68.    Nucor has invested substantial time, effort and money in developing productive relationships, goodwill and business relationship and expectancies with its employees, most of whom were employed under implied at-will employment contracts. Nucor had reason to expect, based on past dealings with its employees, that it would continue its productive relationship with its employees, absent Defendants' improper conduct.

69.    In addition, Nucor attempted to secure the confidentiality of its Trade Secrets and confidential information by requiring its employees to sign confidentiality agreements similar or identical to those signed by Bell. Nucor had reason to expect, based on past dealings with its employees, that they would not breach these confidentiality agreements absent Defendants' improper conduct.

70.    SeverCorr, through Bell, and Bell, have knowledge of Nucor's implied at-will employment contracts with its employees and Bell and SeverCorr have unlawfully, and without justification, interfered with these contracts to their benefit and Nucor's detriment by intentionally, willfully, and maliciously causing or inducing or attempting to solicit Nucor

16

employees' to work for SeverCorr. In particular, SeverCorr and Bell have used Nucor's Trade Secrets and confidential information in soliciting these employees away from Nucor.

71.    In addition, SeverCorr, through Bell, and Bell, have knowledge of Nucor employees' confidentiality agreements and have unlawfully, and without justification, interfered with these agreements to their benefit and Nucor's detriment by intentionally, willfully, and maliciously causing or inducing or attempting to induce Nucor's employees, including those who now work for SeverCorr, to disclose Nucor's Trade Secrets and confidential information to SeverCorr.

72.    The foregoing actions constitute wrongful interference with the implied and express contracts that Nucor has with its employees.

73.    As a direct and proximate result of this interference by SeverCorr and Bell, Nucor has suffered, and will continue to suffer irreparable harm and economic damage in an amount to be determined by the trier of fact.

### SIXTH CAUSE OF ACTION
(Unfair Trade Practices)

74.    Nucor restates and realleges each and every allegation in paragraphs 1 through 73 above.

75.    Pursuant to S.C. Code Ann. §39-5-20 et. seq, SeverCorr and Bell's conduct, as set forth throughout the Complaint, constitutes an unfair method of competition and unfair and deceptive trade acts or practices in the conduct of trade or commerce which have an adverse impact on the public interest being that the conduct has the potential for repetition.

76.    Bell's purpose in taking these damaging and costly actions was to afford SeverCorr an unfair competitive advantage over Nucor, including permitting SeverCorr to benefit at the expense of Nucor from the improper misappropriation, use and inevitable use of

17

Nucor's Trade Secrets, interfering with Nucor's Business Relationship and Expectancies, and gaining the unfair advantage in obtaining a head start in its operations from not having to experience the same trial and errors that Nucor experienced in its use of vacuum degassers in the EAF steelmaking process.

77.    Upon information and belief, Bell is using or intends to use Nucor's confidential and Trade Secret information and the key employees he has solicited away from Nucor, in order to assist SeverCorr in designing and manufacturing products that will directly compete with the products manufactured and produced by Nucor.

78.    Upon information and belief, SeverCorr knew or should have known of Bell's wrongful acts since joining SeverCorr as its Executive Vice President and General Manager of Operations.

79.    Bell's and SeverCorr's conduct and actions have adversely affected the industry for the products at issue and its customers, and have and will continue to have an impact on the public interest.

80.    SeverCorr and Bell's conduct is a willing and knowing violation of S.C. Code Ann. §39-5-20 et. seq and has and will continue to proximately cause damage to Nucor.

81.    Accordingly, pursuant to S.C. Code Ann. §39-5-140, Nucor is entitled to recover from Bell and SeverCorr such damages as it may prove at trial and to have those damages trebled. In addition, Nucor is entitled to recover its reasonable attorneys fees and costs pursuant to S.C. Code Ann. §39-5-140.

**SEVENTH CAUSE OF ACTION**
(Conspiracy)

82.    Nucor restates and realleges each and every allegation in paragraphs 1 through 81 above.

18

83.    Upon information and belief, Bell and SeverCorr knowingly and willingly agreed and conspired between themselves to perform the acts plead in this Complaint, and each such Defendant adopted, approved and ratified the wrongful acts of the other.

84.    Over a period of time, upon information and belief, Bell and SeverCorr have engaged in a deliberate course of conduct for the unlawful purpose of causing serious irreparable injury to Nucor's business by misappropriating, using and inevitably using Trade Secrets and confidential information of Nucor about it's business, customers, products, processes, equipment designs and business relationships and soliciting away Nucor's key employees, and have developed manufacturing processes, design strategies and marketing strategies with knowledge of such information to the competitive disadvantage of Nucor.

85.    Upon information and belief, Bell and SeverCorr engaged in a common plan to injure Nucor's business and to secure said business for the benefit of Bell and SeverCorr.

86.    Upon information and belief, Bell and SeverCorr met, communicated, planned and colluded by telephone and/or other means, to bring about their plan to injure Nucor's business.

87.    By their collective actions, Bell and SeverCorr have caused greater harm to Nucor than either could have individually caused, resulting in separate injury to Nucor which would not have occurred but for their concerted actions.

88.    The recurring improper conduct of Bell and SeverCorr has been the actual and proximate cause of Nucor's injuries.

89.    These wrongful acts by Bell and SeverCorr have caused Nucor actual and punitive damages separate from and above the other actual damages alleged herein, and have caused and continue to cause irreparable harm to Nucor for which such legal damages are insufficient.

19

## EIGHTH CAUSE OF ACTION
(Conversion)

90.     Nucor restates and realleges each and every allegation in paragraphs 1 through 89 above.

91.     Upon information and belief, Bell and SeverCorr have custody and possession of Nucor's Trade Secrets and other confidential and proprietary information, that is the rightful property of Nucor, and Nucor has the right to presently and immediately repossess its Trade Secrets and other confidential and proprietary information.

92.     Bell and SeverCorr have failed to return Nucor's Trade Secrets and other confidential and proprietary information to Nucor.

93.     The actions of Bell and SeverCorr were taken with the intent of permanently depriving Nucor of the use, custody, ownership, and control of its Trade Secrets without paying for same.  The actions of Bell and SeverCorr were willful, wanton, without right or justifiable cause, or the consent of Nucor, and calculated to cause damages to Nucor.

94.     As a direct and proximate result of the actions of Bell and SeverCorr, Nucor has been damaged in an amount to be determined by the trier of fact.

## NINTH CAUSE OF ACTION
(Unjust Enrichment)

95.     Nucor restates and realleges each and every allegation in paragraphs 1 through 94 above.

96.     Bell and SeverCorr's improper conduct alleged above, including their misappropriation of and use and/or threatened or inevitable use of Nucor's Trade Secrets and confidential and proprietary information, has enabled and will continue to enable SeverCorr to compete unfairly with Nucor, including permitting SeverCorr to gain a head start in its

CLT 1011684v3

operations from not having to experience the same trial and errors that Nucor experienced in its use of, among other things, vacuum degassers in the EAF steelmaking process.

97.    These actions were wrongful and performed in a malicious manner to harm Nucor and to unjustly enrich Bell and SeverCorr at Nucor's expense.

98.    As a direct and proximate result of Bell and SeverCorr's improper conduct alleged above, Defendant SeverCorr has been unjustly enriched in an amount to be determined by the trier of fact, and Nucor is entitled to the disgorgement of any and all profits, earnings and commissions attributable to Bell and SeverCorr's wrongful actions.

**TENTH CAUSE OF ACTION**
(Imposition of Constructive Trust)

99.    Nucor restates and realleges each and every allegation in paragraphs 1 through 98 above.

100.    Bell and SeverCorr have derived profits from their wrongful activities and breaches, as alleged previously herein.

101.    It is proper for this Court to impose a constructive trust on any profits Bell and/or SeverCorr have derived, or will derive, from their wrongful activities and breaches pending the outcome of this litigation.

**ELEVENTH CAUSE OF ACTION**
(Injunctive Relief)

102.    Nucor restates and realleges each and every allegation in paragraphs 1 through 101 above.

103.    Bell and SeverCorr's misconduct as alleged previously herein is continuing.

104.    If unrestrained, Nucor will suffer irreparable harm for which there is no adequate legal remedy as a result of Bell's breach of the Confidentiality Agreements, Bell's and SeverCorr's tortious interference with Nucor's implied and express contracts, and Bell's and

21

SeverCorr's use and threatened or inevitable use of Nucor's Trade Secrets. Such harm is irreparable because it is impossible to: (a) determine the impact that could occur from Bell's and SeverCorr's tortious interference with Nucor's implied and express contracts, and use and threatened use of Nucor's Trade Secrets; or (b) measure the full extent of monetary damages that Nucor will suffer.

105.    Upon information and belief, unless restrained, Bell will continue his employment with SeverCorr, continue to use and pose a threat to further use Nucor's Trade Secrets, and continue his attempts to hire Nucor employees for SeverCorr, causing additional irreparable harm to Nucor. Therefore, Nucor is entitled to injunctive relief.

**WHEREFORE**, Nucor respectfully prays that:

1.    Pursuant to Rule 65 of the South Carolina Rules of Civil Procedure and S.C. Code Ann. § 39-8-50, the Court enter a preliminary injunction enjoining Bell and SeverCorr and those in active concert or participation with them from:  (1) contacting, soliciting, recruiting or otherwise discussing with current employees of Nucor potential employment at SeverCorr and (2) using, disclosing, or otherwise misappropriating Nucor's Trade Secrets, including without limitation, Nucor's confidential information regarding its employees and information taken by Bell off of Nucor's computer system;

2.    The Court enter a permanent injunction enjoining SeverCorr, including any affiliates, subsidiaries, or parents from employing Bell at SeverCorr (or any of its affiliates, subsidiaries, or parents) in a position as General Manager of Operations or any other position in which Bell would have to, or may inadvertently, disclose Nucor's Trade Secrets, including information concerning Nucor's manufacturing and technological processes, developments and improvements, plant and equipment layout and design and employee relationships;

3.    The Court enter a permanent injunction enjoining Bell from disclosing or using Nucor's trade secrets including (a) information concerning Nucor's manufacturing and technological processes, developments and improvements, including without limitation the use of vacuum degassers in the EAF steelmaking process; (b) information concerning plant layout and design at Nucor; (c) information regarding Nucor's employment relations; and (d) information taken by Bell off of Nucor's computer system;

4.    The Court enter judgment against Bell and SeverCorr in the amount of damages as may be proven at trial including punitive damages;

5.    The Court enter a declaratory judgment on behalf of Nucor on all its claims;

6.    The Court impose a constructive trust to be held for the benefit of Nucor on any and all profits made by SeverCorr attributable, direct or indirectly, to the wrongful actions by Bell and SeverCorr;

7.    The Court treble the compensatory damages awarded with respect to the fourth claim of relief pursuant to S.C. Code Ann. §39-5-140;

8.    The Court award reasonable attorneys fees and costs pursuant to S.C. Code Ann. §39-5-140;

9.    The Court order the return of all documentation of any sort containing trade secrets or proprietary/confidential information of Nucor, and all property of Nucor.

10.    The Court tax the costs of this action against the Defendants;

11.    That a trial by jury be had on all issues triable; and

12.    The Court grant Nucor such other and further relief as it deems just and appropriate.

23

Respectfully submitted,


s/ J. Walker Coleman, IV
J. Walker Coleman, IV
Fed. ID No. 6007
Email:  walkercoleman@parkerpoe.com
J. W. Nelson Chandler
Fed. ID No. 7593
Email: nelsonchandler@parkerpoe.com
PARKER POE ADAMS & BERNSTEIN LLP
200 Meeting Street, Suite 301
Charleston, SC  29401
Phone:  843-727-2650
Fax:  843-727-2680

*OF COUNSEL:*
William L. Rikard, Jr.
N.C. Bar No. 3701
Email:  williamrikard@parkerpoe.com
Eric D. Welsh
N.C. Bar No. 29629
Email:  ericwelsh@parkerpoe.com
PARKER POE ADAMS & BERNSTEIN LLP
Three Wachovia Center
401 South Tryon Street, Suite 3000
Charlotte, NC  28202
Phone:  704-372-9000
Fax:  704-334-4706

ATTORNEYS FOR PLAINTIFF
NUCOR CORPORATION

January 19, 2007

Charleston, South Carolina

CLT 1011684v3

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

### CHARLESTON DIVISION

| | | |
|---|---|---|
| NUCOR CORPORATION, | ) | Case No. 2:06-cv-02972-PMD |
| Plaintiff, | ) | |
| vs. | ) | VERIFICATION |
| JOHN BELL and SEVERCORR, LLC, | ) | |
| Defendants. | ) | |

Ladd Hall, being first duly sworn, deposes and says that: he is the Vice President of Nucor Corporation ("Nucor"); that he has read the foregoing Verified Complaint; and that he believes the facts and allegations of the Verified Complaint to be accurate based on either his own personal knowledge, the inquiry of other employees of Nucor or the review of documentation.

_____
Ladd Hall

SWORN and subscribed to before me
this 18th day of JANUARY, 2007.

_____ (L.S.)
Notary Public for South Carolina
My commission expires: _____
MY COMMISSION EXPIRES MAY 17, 2015

25

CLT 1011684v3

## EXHIBIT C

**District Court of South Carolina Scheduling Order dated February 19, 2008**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | | |
|---|---|---|
| NUCOR CORPORATION, | ) | Case No. 2:06-cv-02972-DCN |
| Plaintiff, | ) | |
| | ) | |
| v | ) | |
| | ) | SCHEDULING ORDER |
| JOHN BELL and SEVERCORR, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pursuant to the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, the following schedule is established for this case. This order is entered to administer the trial of cases in a manner consistent with the ends of justice, in the shortest possible time, and at the least possible cost to litigants.

1.   <u>All Expert Witnesses' Reports Shall Be Provided as Follow:</u>

A.   Forensic Computer Experts:

The parties have already exchanged final reports of their forensic computer experts, Mr. Jorgensen and Dr. McLinden.

B.   Steelmaking Experts:

Plaintiff has provided the final reports of its steelmaking experts, Dr. Fruehan and Dr. Thomas. Defendants shall provide final reports of their steelmaking expert(s) within ten days of the completion of the depositions of Plaintiff's steelmaking experts.

C.   Economic Experts:

Plaintiff s final economic expert(s) report(s) shall be due on <u>February 22, 2008,</u> along with all documents reviewed or considered by the expert(s) in rendering his opinion or a list of such documents if previously produced in the litigation. Defendants shall provide their final

economic expert(s) report(s) on <u>April 7, 2008</u>, along with all documents reviewed or considered by the expert(s) in rendering his opinion or a list of such documents if previously produced in the litigation.

2.    <u>Witnesses</u>:

By <u>March 3, 2008</u>, the parties should identify all witnesses, not already deposed or scheduled to be deposed, who they intend to call at the trial. The parties may make counter designations by <u>March 10, 2008</u>.

3.    <u>Documents</u>:

By <u>March 3, 2008</u>, the parties should designate any document that they intend to use at trial that has not already been produced. The parties may make counter-designations by <u>March 10, 2008</u>.

4.    <u>Discovery</u>:

With the exception of expert discovery relating to Plaintiffs economic expert(s) and Defendants' responsive economic expert(s), Fact and Expert discovery shall be completed no later than <u>April 4, 2008</u>. Except as noted above, all discovery requests shall be served in time for the responses thereto to be served by this deadline. All depositions, except for economic experts, must be taken before this deadline.

5.    <u>Dispositive Motions</u>:

All dispositive motions and all Daubert motions, with the exception of motions relating to the economic experts, shall be filed on or before <u>April 8, 2008</u>. Response briefs to such motions shall be due <u>May 5, 2008</u>. Reply briefs shall be due <u>May 15, 2008</u>.

6.    <u>Witnesses/Exhibits</u>:

Witness and Exhibit Lists shall be completed and exchanged on or before <u>May 1, 2008</u>.

7.    <u>Pre Trial Briefs</u>:

      Pre-trial briefs shall be filed on or before <u>May 13, 2008</u>.

8.    <u>Motions in Limine</u>:

      All motions in limine shall be filed on or before <u>May 16, 2008</u>.

9.    <u>Trial</u>:

      The trial will begin on <u>June 2, 2008</u>, or as soon thereafter as possible.

AND IT IS SO ORDERED.

_____
THE HONORABLE DAVID C. NORTON
United States District Court Judge
Charleston, South Carolina

February 19, 2008

## EXHIBIT D

**Letter from Denise Andrews to Greg Horton dated April 14, 2008**



UNIVERSITY OF
MARYLAND

OFFICE OF THE PRESIDENT

2101 Main Administration Building
College Park, Maryland 20742
301.405.4945 TEL 301.314.9395 FAX

April 14, 2007

**VIA Facsimile (843) 723-7398**
Greg Horton, Esquire
Buist Moore Smythe McGee P.A.
5 Exchange Street
Charleston, S.C. 29402-0999

Re:    Nucor v. Bell—Second Subpoena to
       University of Maryland

Dear Mr. Horton:

I write regarding the second subpoena that you issued to the University of Maryland in the above-referenced case. The second subpoena was served on the University, which is not a party to the litigation, on April 3, 2008. The return date is April 17, 2008. For the reasons set forth below, the subpoena is invalid and requires no response or other action.

According to the Scheduling Order issued by the United States District Court for the District of South Carolina, Charleston Division, all fact and expert discovery in the case (with the exception of certain economic experts) was to be completed no later than April 4, 2008. Significantly, the court expressly required that "all discovery requests . . . be served in time for the responses thereto to be served by this deadline." The second subpoena to the University was issued on April 2, served on April 3 and required inspection on April 17, a date nearly two weeks beyond the discovery deadline set by the court. Moreover, the two week response time specified in the subpoena is grossly inadequate given the still expansive nature and scope of the documents requested. Accordingly, the subpoena is invalid and without legal force or effect.

Because the subpoena is invalid, no response is required; nor is the University obligated at this time to review the document requests or its records for the purpose of responding or formulating objections under Fed. R. Civ. P. 45(c)(2)(B). However, without waiving any rights, I also note that, despite your revisions, the University would object to the new subpoena pursuant to Rule 45(c), on numerous grounds, including but not limited to, the following: the subpoena (including its definitions and instructions and each documents request) is still vague, overly broad, unduly burdensome and intrusive, appears to encompass irrelevant, confidential and/or privileged information, as well as possibly inaccessible electronically stored information, fails to allow a reasonable time to comply and would require significant time and expense for compliance.

Accordingly, the University reserves all rights under Rule 45(c), including the right to object and to request that the court impose appropriate sanctions, including

Greg Horton, Esquire
April 14, 2008
Page 2

reasonable attorney's fees, for failing to take reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena.  Without prejudice to its rights, if the subpoena is validated or defendants are authorized by the court to issue a new subpoena, the University remains willing to discuss the subpoena and the possibility of addressing its deficiencies, particularly if defendants are willing more specifically to identify the documents and types of records sought.

Sincerely,

Denise A. Andrews
University Counsel

# EXHIBIT E

**Letter from Thomas W. Kirby to Greg Horton dated April 10, 2008**



1776 K STREET NW
WASHINGTON, DC 20006
PHONE  202.719.7000
FAX  202.719.7049

7925 JONES BRANCH DRIVE
McLEAN, VA 22102
PHONE  703.905.2800
FAX  703.905.2820

www.wileyrein.com

April 10, 2008

Thomas W. Kirby
202.719.7062
tkirby@wileyrein.com

Greg Horton, Esq.
Buist Moore Smythe McGee P.A.
5 Exchange Street
Charleston, SC 20742

Re:    Second Subpoena to Professor Morici – Nucor v. Bell

Dear Mr. Horton:

On behalf of my client, Professor Peter Morici, I object to your repeated harassment of him with invalid subpoenas.

On March 12 you had delivered to one of his colleagues – not him – a purported subpoena for documents, issued from the federal court in Maryland but calling for production in South Carolina. That document was facially invalid for each of the many reasons listed in my March 25 letter of objection. It was not a serious effort to invoke Rule 45 and certainly was not calculated to achieve prompt compliance. In the face of my objection, you abandoned the first subpoena and caused Professor Morici to be served on April 4 with a new subpoena from a the federal court in D.C., purporting to demand compliance with the same sweeping demands at a new time, April 17, and a new place, Washington, D.C.

The new subpoena revealed that the case in which you sought discovery was in the U.S. District Court for South Carolina, information the first subpoena omitted in direct violation of Rule 45. I obtained the Scheduling Order in that case. It specifies (¶5) that "discovery shall be completed no later than <u>April 4, 2008</u> [and] requests shall be served in time for the responses thereto to be served by this deadline" (emphasis by court). Of course, it is forbidden to use a "subpoena after a discovery deadline to obtain materials from third parties that could have been produced before discovery." 9A FPP Civ.2d § 2452 & n. 11 (collecting authorities).

Neither of your subpoenas were a reasonable effort to obtain a response before April 4. They were not rifle-shot requests for a few easily identified items. Instead, they were the type of sweeping document demands often directed to parties. Rule 34 guarantees a party 30 days to make initial objections, with actual production thereafter. In fairness, a third party who receives such a sweeping demand should receive more time, not less. Thus, if you had seriously sought to comply with the April 4 discovery deadline, you would have served a facially valid subpoena some time in February. Starting in mid-March guaranteed that the April 4 deadline would not be met, doubly so since the initial subpoena was facially invalid. And your second subpoena, though it calls for production two-weeks after the deadline, would require months if the deadline were extended.



Greg Horton, Esq.
April 10, 2008
Page 2

Rule 43 permits lawyers, as officers of the court, to act in the court's name, exercising its power. With that exceptional authority comes a high duty to avoid misuse of the court's authority. By commanding Professor Morici to begin reviewing sweeping demands and evaluating a massive number of documents you knew you were legally forbidden to seek, you committed a serious abuse.

In response to my emails, you did not dispute that the new subpoena violated the discovery deadline. Instead, three days after it was served, you filed a motion to extend the deadline. But that is a mere motion, not an order, and it is contested by your opposing party, Nucor. You had no right to use the power of the D.C. court as if you already had obtained relief. Nor does the law recognize springing subpoenas, unlawful when served but later given life.

Professor Morici objects to the subpoena in its entirety as unlawful and abusive. In the circumstances, he has no duty to review the document requests or his records to develop other more detailed objections. However, it is apparent that each request is irrelevant, overbroad, unduly burdensome and intrusive, makes no provision for expense or compensation, violates attorney-client, work product, and First Amendment privilege, threatens trade secrets, academic freedom, and the confidential interests of Nucor and Professor Morici, improperly seeks expert opinion, encompasses electronic and other data not readily available, provides inadequate time, and reflects an improper purpose.

If you believe the second subpoena was valid and lawfully requires Professor Morici to be devoting resources to preparing to respond, please so advise by noon tomorrow, providing an explanation and any authority you rely upon. Otherwise, Professor Morici will regard the second subpoena as dead on delivery.

I again remind you that Rule 45(c)(1) requires one issuing a subpoena to take "reasonable steps to avoid imposing undue burden or expense" and specifies that the court "must enforce this duty and impose an appropriate sanction." You twice have violated that obligation and have seriously abused the authority of the U.S. District Courts in D.C. and Maryland. My client reserves all rights under that provision.

Sincerely yours,

Thomas W. Kirby

# EXHIBIT F

**Plaintiff's Opposition to Defendants' Motion for Enlargement of Time**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

### CHARLESTON DIVISION

| | | |
|---|---|---|
| NUCOR CORPORATION, | ) | **Case No. 2:06-cv-02972-DCN** |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF'S OPPOSITION TO** |
| vs. | ) | **DEFENDANTS' MOTION FOR** |
| | ) | **ENLARGEMENT OF TIME** |
| JOHN BELL and SEVERCORR, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Nucor Corporation ("Nucor"), by its counsel, hereby submits this Opposition to Defendants' Motion ("Motion") for Enlargement of Time in conjunction with its Motion for Protective Order. Defendants seek an extension of the discovery deadline of the Scheduling Order. Defendants have done so after the deadline for completing discovery has run. Moreover, Defendants have made no showing that they have good cause to seek an extension of the discovery deadline. Finally, a retroactive extension of the established deadline would delay the trial of this case. Accordingly, the Court should deny the Motion.

## I.     FACTUAL BACKGROUND

On February 19, 2008, the Court entered a Scheduling Order in this case. As noted on its face, the purpose of the Scheduling Order is "to administer the trial of cases in a manner consistent with the ends of justice, in the shortest possible time, and at the least possible cost to litigants." Significantly, under the terms of the Scheduling Order, all fact discovery "shall be completed no later than <u>April 4, 2008</u> . . . . [and] all discovery requests shall be served in time for the responses thereto to be served by this deadline."

On the eve of the discovery deadline, Defendants served document subpoenas on two third parties commanding them to produce documents after the Court ordered discovery period. On April 3, 2008, Defendants served a document subpoena on the University of Maryland (the "University"), under which the University was commanded to produce documents on or before April 17, 2008. Thereafter, on April 4, 2008, the last day of the discovery period, Defendants served a subpoena on Dr. Peter Morici ("Dr. Morici"), a professor at the University of Maryland School of Business. The subpoena purported to command Dr. Morici to produce eight separate categories of documents on or before April 19, 2008. Dr. Morici, through his counsel, Thomas Kirby ("Kirby") has objected to the subpoenas. [1]  (See Letter from Kirby to Horton, dated April 10, 2008, attached hereto as Exhibit A.)

On April 7, 2008, three days *after* the discovery deadline had run, Defendants filed the Motion. In the Motion, Defendants explain that the subpoenas relate to an analysis of SeverCorr prepared by Dr. Morici dated January 2005, a copy of which they attached. Presumably, Defendants have had a copy of Dr. Morici's analysis since the date of its issuance and certainly long before the discovery cut-off. Defendants do not state otherwise and offer no explanation for their untimely discovery.

## II.    ARGUMENT

Rule 16(b) of the Federal Rules of Civil Procedure authorizes the district court to control and expedite pretrial discovery through a scheduling order. Scheduling orders are necessary

---

[1] Earlier, on March 10, 2008, Defendants attempted to issue subpoenas to Dr. Morici and the University. The subpoenas were defective, however, because, among other things, they failed to state the court in which this action is pending. Additionally, Defendants failed to serve Plaintiff with copies of the subpoenas or provide proper notice. By re-serving subpoenas on Dr. Morici and the University, Defendants acknowledge that the earlier subpoenas were not in compliance with the Federal Rules of Civil Procedure.

2

tools in managing the Court's caseload. *Potomac Electric Power Co. v. Electric Motor Supply, Inc.*, 190 F.R.D. 372, 376 (D. Md. 1999). As one court has noted:

> [d]elays are a particularly abhorrent feature of today's trial practice. They increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution. Adherence to reasonable deadlines is critical to restoring integrity in court proceedings.

*Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990). *See also Barwick v. Celotex Corp.*, 736 F.2d 946, 954-55 (4th Cir. 1984) (recognizing that the terms of a scheduling order must be firmly enforced if it is to serve the purpose of pre-trial management). Indeed, a "scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Dilmar Oil Co. v. Federated Mutual Insurance Co.*, 986 F.Supp. 959, 980 (D.S.C. 1997), *aff'd by unpublished opinion*, 129 F.3d 116, No. 97-1554, 1997 WL 702267 (4th Cir. 1997).

Rule 16(b) provides in pertinent part that a "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Rule 16(b) does not focus on bad faith of the movant or the prejudice to the opposing party; rather, it focuses on the diligence of the party seeking leave to modify the scheduling order. *Dilmar*, 986 F.Supp. at 980. "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." *Dilmar*, 986 F.Supp. at 980; *Potomac Electric*, 190 F.R.D. at 375. In other words, a scheduling order can only be modified on a showing of good cause if the deadline cannot be met despite the diligence of the party seeking the extension. *Dilmar*, 986 F.Supp. at 980. Notably, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. *Id.; Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

Here, Defendants' Motion should be denied because it is untimely. Defendants did not file the Motion until days *after* the Court ordered discovery deadline had run.[2] Accordingly, because Defendants' Motion is untimely, no further inquiry on the appropriateness of an extension of the deadline post hoc should be necessary.

Additionally, Defendants have failed to make a good cause showing that the Court ordered discovery deadline should be extended. Defendants have long been aware of the existence of Dr. Morici, as evidenced by the copy of his January 2005 analysis attached to the Motion. Despite their knowledge of Dr. Morici and their possession of his analysis, Defendants did not serve him or his employer, the University, with document subpoenas until the close of discovery. Defendants' only excuse for their failure to timely serve the subpoenas so as to allow for responses within the discovery period comes in a cursory presentation of their unsuccessful attempts to subpoena records from Dr. Morici and the University on March 10, 2008. Defendants' earlier carelessness, that is, their earlier failure to comply with Rule 45 of the Federal Rules of Civil Procedure, provides no reason for an extension of the discovery deadline. *Johnson*, 975 F.2d at 609; *Dilmar*, 986 F.Supp. at 980. Further, the agreement of the parties to complete <u>certain</u> depositions after the discovery deadline does not excuse Defendants' lack of diligence and should not result in an extension of the deadline for all discovery.[3]

---

[2] Note, on March 25, 2008, after Defendants' earlier attempt to serve Dr. Morici, counsel for Dr. Morici sent counsel for Defendants a letter detailing objections to the subpoena, including an objection on the ground of improper service. (*See* Letter from Kirby to Horton, dated March 25, 2008, attached hereto as Exhibit B.) Upon learning of the subpoena's deficiencies, Defendants could have filed a motion to enlarge the discovery deadline. Defendants, however, failed to do so.

[3] As detailed in Plaintiff's Motion for Protective Order filed in conjunction herewith, an extension of the discovery deadline to allow Dr. Morici and the University to respond to Defendants' subpoenas would also be futile, because the subpoenas seek information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Any argument that the requested information is relevant to Defendants' purported unclean hands defense or any claim they might attempt to make for attorneys' fees pursuant to S.C. Code Ann.

4

Finally, a retroactive extension of the discovery deadline would serve to delay the deadline for dispositive motions and, even more importantly, the trial of this case, which is scheduled for June 2, 2008. Note, counsel for Dr. Morici, Kirby, estimates that compliance with the sweeping demands of the subpoena would require "months" of work and would come only after further objections. (*See* Letter from Kirby to Horton, dated April 10, 2008, Exhibit A.) Because a retroactive extension of the discovery deadline would cause considerable and unnecessary delay, the Motion should be denied.

In sum, Defendants could have requested the documents earlier through properly issued and served subpoenas or, they could have sought an extension of the discovery deadline before such deadline ran. Defendants did neither and thus, the Motion should be denied.

## III.    CONCLUSION

For the reasons set forth above, this Court should deny Defendants' Motion for an Enlargement of Time.

**[SIGNATURE BLOCK ON NEXT PAGE]**

---

§ 39-8-80 is without merit because records concerning Plaintiff's lawful dealings with Dr. Morici (or his employer) do not bear on those matters.

5

Respectfully submitted,

s/ J. Walker Coleman
J. Walker Coleman, IV
Fed. ID No. 6007
Email:  walkercoleman@parkerpoe.com
J. W. Nelson Chandler
Fed. ID No. 7593
Email:  nelsonchandler@parkerpoe.com
PARKER POE ADAMS & BERNSTEIN LLP
200 Meeting Street, Suite 301
Charleston, SC  29401
Phone:  843-727-2650
Fax:  843-727-2680

*OF COUNSEL:*
William L. Rikard, Jr.
N.C. Bar No. 3701
Email:  williamrikard@parkerpoe.com
Eric D. Welsh
N.C. Bar No. 29629
Email:  ericwelsh@parkerpoe.com
PARKER POE ADAMS & BERNSTEIN LLP
Three Wachovia Center
401 South Tryon Street, Suite 3000
Charlotte, NC  28202
Phone:  704-372-9000
Fax:  704-334-4706

ATTORNEYS FOR PLAINTIFF
NUCOR CORPORATION

April 15, 2008

Charleston, South Carolina  29401

6

# EXHIBIT G

**Plaintiff's Motion for Protective Order & Memorandum in Support**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

### CHARLESTON DIVISION

| | | |
|---|---|---|
| NUCOR CORPORATION, | ) | |
| | ) | **Case No. 2:06-cv-02972-DCN** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **PLAINTIFF'S** |
| | ) | **MOTION FOR PROTECTIVE ORDER** |
| JOHN BELL and SEVERCORR, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Nucor Corporation ("Nucor"), by and through its undersigned counsel, hereby moves the Court for entry of a Protective Order pursuant to Rules 26(c) and 30(d), FRCP. Specifically, Nucor seeks an Order protecting it and Helmut Oltmann, one of Nucor's 30(b)(6) designees, from undue burden, otherwise avoidable expense, and oppressive discovery tactics. Mr. Oltmann, Nucor's final 30(b)(6) designee, was deposed to the extent of his knowledge on March 7, 2008. Defendants John Bell and SeverCorr, LLC (together, "SeverCorr") would resume Mr. Oltmann's deposition to question him, as a representative of Nucor, on a matter wholly outside the scope of the 30(b)(6) Notice, regarding an SMS document that SeverCorr declined to identify in advance of the deposition and that Nucor otherwise could not have shown the witness due to its confidential designation. Nucor seeks an Order denying SeverCorr's request and deeming Mr. Oltmann's deposition concluded. The grounds for this Motion are more fully set forth in the Memorandum filed in conjunction herewith.

Pursuant to Rule 26(c), FRCP, the undersigned certifies that counsel for Nucor and SeverCorr have conferred in good faith in an attempt to resolve this issue without court action, but have been unable to do so.

Respectfully submitted,

s/ J. Walker Coleman, IV
J. Walker Coleman, IV
Fed. ID No. 6007
Email: walkercoleman@parkerpoe.com
J. W. Nelson Chandler
Fed. ID No. 7593
Email: nelsonchandler@parkerpoe.com
PARKER POE ADAMS & BERNSTEIN LLP
200 Meeting Street, Suite 301
Charleston, SC 29401
Phone: 843-727-2650
Fax: 843-727-2680

*OF COUNSEL:*
William L. Rikard, Jr.
N.C. Bar No. 3701
Email: williamrikard@parkerpoe.com
Eric D. Welsh
N.C. Bar No. 29629
Email: ericwelsh@parkerpoe.com
PARKER POE ADAMS & BERNSTEIN LLP
Three Wachovia Center
401 South Tryon Street, Suite 3000
Charlotte, NC 28202
Phone: 704-372-9000
Fax: 704-334-4706

ATTORNEYS FOR PLAINTIFF
NUCOR CORPORATION

April 16, 2008

Charleston, South Carolina

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

## CHARLESTON DIVISION

| | | |
|---|---|---|
| NUCOR CORPORATION, | ) | |
| | ) | **Case No. 2:06-cv-02972-DCN** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **PLAINTIFF'S MEMORANDUM** |
| | ) | **IN SUPPORT OF MOTION FOR** |
| JOHN BELL and SEVERCORR, LLC, | ) | **PROTECTIVE ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Nucor Corporation ("Nucor"), by and through its undersigned counsel, submits this Memorandum in Support of its Motion for Protective Order, pursuant to Rule 26(c), FRCP:

## I. INTRODUCTION

The Motion stems from Defendants' attempt to continue with formal discovery through subpoenas under the guise of Rule 45, FRCP, after the discovery deadline has run. Defendants' last minute subpoenas come too late, and their cavalier disregard for the Court ordered discovery deadline should not be rewarded. In addition to being untimely, the subpoenas impose undue burden on Plaintiff and the third party recipients. Accordingly, Plaintiff respectfully seeks the issuance of an Order to protect it and others from Defendants' unauthorized discovery practices and the undue burden resulting therefrom.

## II. BACKGROUND

On February 19, 2008, the Court entered a Scheduling Order in this case. As noted on its face, the purpose of the Scheduling Order is "to administer the trial of cases in a manner consistent with the ends of justice, in the shortest possible time, and at the least possible cost to litigants." Significantly, under the terms of the Scheduling Order, all fact discovery "shall be

completed no later than April 4, 2008 . . . . [and] all discovery requests shall be served in time for the responses thereto to be served by this deadline."

On the eve of the discovery deadline, Defendants purported to serve document subpoenas on two third parties purporting to command them to produce documents after the Court ordered discovery period. On April 3, 2008, Defendants purported to serve a document subpoena on the University of Maryland (the "University"), under which the University was commanded to produce documents on or before April 17, 2008. The subpoena purports to command production of four categories of documents relating to, among other things, Plaintiff's involvement, financial or otherwise, with the University and Plaintiff's communications with a professor employed by the University, Dr. Peter Morici ("Dr. Morici"), none of which relates to Plaintiff's trade secrets. On April 14, 2007, Denise Andrews, counsel for the University, objected to the subpoena. (*See* letter from Andrews to Horton dated April 14, 2007 (sic), attached hereto as Exhibit A.)

Thereafter, on April 4, 2008, the last day of the discovery period, Defendants purported to serve a subpoena on Dr. Morici. The subpoena to Dr. Morici purports to command production of eight separate categories of documents on or before April 19, 2008. Several of the categories request documents and communications dating back to 2000, and none of the categories seek information concerning matters relating to Plaintiff's trade secrets. On April 10, 2008, Counsel for Dr. Morici, Thomas W. Kirby ("Kirby"), objected to the subpoena. [1] (*See* letter from Kirby to Horton dated April 10, 2008, attached hereto as Exhibit B.)

---

[1] Earlier, on March 10, 2008, Defendants attempted to issue subpoenas to Dr. Morici and the University. The subpoenas were defective, however, because, among other things, they failed to state the court in which this action is pending. Through their respective attorneys, both Dr. Morici and the University objected to the subpoenas. Additionally, Defendants failed to serve Plaintiff with notice of the subpoenas in violation of Rule 45(b)(1). By re-serving subpoenas on

2

On April 7, 2008, three days *after* the deadline to complete discovery, Defendants filed a Motion for Enlargement of Time seeking a retroactive extension of the discovery deadline so as to allow Dr. Morici and the University time to respond to the subpoenas. In so requesting, Defendants explained that the subpoenas relate to an analysis of SeverCorr prepared by Dr. Morici dated January 2005, a copy of which they attached. Presumably, Defendants have had a copy of Dr. Morici's analysis since the date of its issuance and certainly long before the discovery cut-off. Defendants do not state otherwise and offer no explanation for their untimely discovery.

Plaintiff has filed an Opposition to Defendants' Motion for an Enlargement of Time. Plaintiff now files this Motion for Protective Order seeking the issuance of a protective order to prohibit Defendants from pursuing unauthorized and burdensome discovery.

### III. DISCUSSION

Rule 26(c), FRCP, authorizes the Court to issue protective orders. Pursuant to Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A). As a party, Plaintiff clearly has standing to move for a protective order relating to third party subpoenas. *Auto-Owners Insurance Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005).

---

Dr. Morici and the University, Defendants acknowledge that the earlier subpoenas were not in compliance with the Federal Rules of Civil Procedure and void.

Here, good cause exists to prohibit the discovery of the records and information sought by the subpoenas to Dr. Morici and the University.    First, a protective order is appropriate because the subpoenas are in complete contravention of the Scheduling Order.    Additionally, the discovery requested through the subpoenas imposes undue burden because the subpoenas seek irrelevant information and thus, a protective order is warranted.

### A.    A Protective Order is Warranted Because The Subpoenas Violate The Court's Discovery Deadline.

The subpoenas are a deliberate attempt to circumvent the Scheduling Order, which Order governs all discovery, including subpoenas.  Fed. R. Civ. P. 26(a)(5) (instructing that parties may obtain "discovery" through, among other methods, the production of documents under Rule 45); *Marvin Lumber and Cedar Co. v. PPG Industries, Inc.*, 177 F.R.D. 443, 443-44 (D. Minn. 1997) (recognizing that the definition of "discovery" in Rule 26 encompasses subpoenas); *Rice v. United States*, 164 F.R.D. 556, 559 (N.D. Okl. 1995) ("Thus, the better reasoned view is that the Rule 45 subpoenas duces tecum . . . are a form of discovery and, therefore, are subject to the Court's discovery deadline").  Numerous courts have issued protective orders where parties have served subpoenas in violation of a scheduling order discovery deadline.  *Marvin Lumber,* 177 F.R.D. at 445 (holding plaintiffs were entitled to a protective order prohibiting defendant from serving or enforcing subpoenas duces tecum to nonparties where subpoenas had a return date after the date set for completion of discovery); *Auto-Owners*, 231 F.R.D. at 429-30 (finding good cause to issue a protective order where discovery to nonparties was overbroad and irrelevant). *See also Rice*, 164 F.R.D. at 558 (quashing subpoenas as untimely under court's case management order); *McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 588 (W.D.N.Y.

1995)[2] (quashing subpoena to third party served after deadline for discovery); *Minnesota Supply Co. v. The Raymond Corp.*, No. 99-832, 2002 WL 31898162, at *2 (D. Minn. Dec. 27, 2002) (affirming grant of protective order and motion to quash where subpoenas were served outside the discovery deadline); *Four M. Corp. v. Guiliano*, No. 89 Civ. 5275, 1991 WL 44840, at *1 (S.D.N.Y. Mar. 27, 1991) (quashing subpoenas to third parties because defendant failed to seek the discovery during the discovery period).

The District Court of Minnesota's decision in *Marvin Lumber* is instructive. In that case, defendant sought to serve and enforce subpoenas duces tecum to nonparties with return dates after the discovery deadline. *Marvin Lumber*, 177 F.R.D. at 445. Plaintiff moved for a protective order on the grounds that defendant should be precluded from continuing to conduct discovery through the medium of subpoenas after the discovery deadline. *Id.* In issuing the requested protective order, the court noted:

> [T]o allow a party to continue with formal discovery – that is, discovery which invokes the authority of the Court – whether in the guise of Rule 45, or any of the other discovery methods recognized by Rule 26(a)(5), after the discovery deadline unnecessarily lengthens [the] discovery process, and diverts the parties' attention, from the post-discovery aspects of preparing a case for Trial, to continued involvement in the discovery, and in the nondispositive [motion process].

*Id.* at 445. Additionally, the court recognized that the obligation of a party to monitor an opponent's discovery, as allowed by Rule 45, FRCP, is no less burdensome or expansive than that demanded by the other methods of formal discovery. *Id.* Accordingly, the court concluded that there was "no plausible reason to exempt Rule 45 discovery from the time constraints" provided for in the scheduling order and thus, issued the requested protective order. *Id.*

Like the subpoenas in *Marvin Lumber*, the subpoenas issued to Dr. Morici and the University are fundamentally defective because the response deadlines for the subpoena are after

---

[2] All unpublished opinions referred to herein are attached hereto as Exhibit G.

the Court ordered deadline for completing discovery in this case. The Scheduling Order is clear that all fact discovery must be *completed* no later than April 4, 2008. Despite the clear language of the Scheduling Order, Defendants served document subpoenas to two third parties that purported to command production of documents two weeks *after* the discovery deadline. Defendants ignored the discovery deadline at their own peril and should not be rewarded for their decision to not to seek third party discovery from Dr. Morici and the University in a timely manner.

Defendants do not, and cannot, provide a reason for their delay in seeking the requested discovery. Rather, in an attempt to excuse their failure to timely serve the subpoenas so as to allow for responses within the discovery period, Defendants point to their earlier unsuccessful attempts to subpoena records from Dr. Morici and the University on March 10, 2008. There is no reason why Defendants couldn't have properly and timely served subpoenas of Dr. Morici and the University. Defendants' failure to comply with Rule 45, FRCP, provides no reason to ignore the discovery deadline. Additionally, Defendants could have requested an extension of the discovery deadline *before* it ran.[3] Although Defendants did file a Motion for Enlargement of Time, they did so several days *after* the deadline ran. Defendants now wish to retroactively extend the discovery deadline at a time when Plaintiff is preparing for trial, and at a time when Plaintiff will be preoccupied with responding to Defendants' indicated summary judgment motion.

---

[3] It is worth noting that on March 25, 2008, after Defendants' earlier attempted service on Dr. Morici, counsel for Dr. Morici sent counsel for Defendants a letter detailing objections to the subpoena, including an objection on the ground of improper service. (*See* Letter from Kirby to Horton, dated March 25, 2008, attached hereto as Exhibit C.) Upon learning of the subpoena's deficiencies, Defendants could have filed a motion to enlarge the discovery deadline. Defendants, however, failed to do so.

6

Because Defendants have blatantly disregarded the discovery deadline, the Court should issue a protective order with regard to the subpoenas issued to Dr. Morici and the University.

**B.    A Protective Order is Necessary Because The Subpoenas Are Unduly Burdensome.**

Whether a subpoena imposes an "undue burden" upon a witness is a case specific inquiry that turns on "such factors as relevance, need of the party for the documents, breadth of document request, time period covered by it, particularity with which documents are described and burden imposed." *American Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Oh. 1999); *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 53 (S.D.N.Y. 1996). Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure. *Katz v. Batavia Marine & Sporting Supplies*, 984 F.2d 422, 424 (Fed. Cir. 1993); *Echostar Communications Corp. v. The News Corporation Ltd.,* 180 F.R.D. 391, 394 (D.Colo.1998). Demonstrating relevance is the burden of the party seeking discovery. *Wilson Cook Group, Inc. v. C.R. Bard, Inc.*, 149 F.3d 249, 252 (4th Cir. 1998).

The discovery sought by the Defendants does not come within the scope of discovery allowed by Rule 26 and thus, should not be allowed. The scope of discovery is governed by Rule 26, FRCP, which allows "discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). Although the term relevant is to be construed broadly, discovery, like all matters of procedure, has ultimate and necessary boundaries. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Defendants cannot meet their burden and show that the documents requested of Dr. Morici and the University are relevant to this case. Presumably, Defendants will argue that the records are relevant to show that Plaintiff acted in "bad faith" in filing its trade secret claim and

7

to support Defendants' unclean hands defense. Neither argument is supported in fact or law. Accordingly, a protective order is warranted to protect Plaintiff and the subpoena recipients from undue burden.

**1.    The documents sought are not relevant to determine whether Plaintiff acted in "bad faith" in filing its trade secret claim.**

Any argument that the documents sought are relevant to a claim for attorneys' fees pursuant to S.C. Code Ann. § 39-8-80, which allows for fees if a claim for misappropriation is made in "bad faith," is without merit. Defendants apparently contend that Plaintiff has systematically attempted to keep SeverCorr out of the marketplace and that the filing of the subject lawsuit is another effort on the part of Plaintiff to prevent competition to Plaintiff. In so contending, Defendants argue that all evidence of Plaintiff's motive in filing trade secret claims against Defendants is relevant to determine whether it acted in bad faith in filing the claims. Defendants' argument is fatally flawed because motive is not considered in a bad faith inquiry.

"Bad faith" is not defined in the SCTSA or the Uniform Trade Secrets Act. Several courts, however, have interpreted bad faith provisions identical to the provision at issue and have determined that bad faith cannot be found where the trade secret claims have objective merit. The Fourth Circuit has utilized the "objective reasonableness" standard in determining what constitutes "bad faith" in the filing of a trade secret claim and has concluded that objective merit, rather than subjective intent, is the appropriate inquiry. *See Trident Perfusion Associates, Inc. v Lesnoff*, No. 96-2242, 1997 WL 528321, at *2-3 (4th Cir. (Va.) Aug. 28, 1997) (affirmatively determining that the "objective reasonableness standard" should apply and applying it where the plaintiff "had no chance of success under the [a]ct"); *Young Design, Inc. v. Teletronics International, Inc.*, 38 Fed.Appx. 994, 997-98, No. 01-2474, 2002 WL 1586986, at *2-3 (4th Cir. (Va.) Jul. 19, 2002) (applying "objective reasonableness" standard to defendant's fee request

under the Virginia Uniform Trade Secrets Act and finding that fees were not warranted because the trade secret claims were not pursued in bad faith where plaintiff's trade secret claim was not legally insufficient and "had survived extensive pre-trial motions."); *IVS Hydro, Inc. v. Robinson*, 93 Fed.Appx. 521, 528-29, Nos. 03-1827, 03-1898, 2004 WL 626828, at *7 (4th Cir. (W.Va.) Mar. 31, 2004) (applying "objective reasonableness" standard to defendants' fee request under the West Virginia Uniform Trade Secrets Act and finding fees not warranted where plaintiff's trade secret claims were not "frivolous").

    Similarly, other courts have inquired into the merits of trade secrets claims, rather than the motives for filing such claims, in evaluating the presence of bad faith. Those courts have interpreted "bad faith" to require "objective speciousness" of the plaintiff's claim *and* to also require "subjective bad faith" in bringing or maintaining the claim. *Degussa Admixtures, Inc. v. Burnett*, 471 F.Supp.2d 848, 857 (W.D. Mich. 2007); *Contract Materials Processing, Inc. v. Kataleuna GMBH Catalysts*, 222 F.Supp.2d 733, 745 (D. Md. 2002); *Gemini Aluminum Corp. v. California Custom Shapes, Inc.*, 95 Cal.App.4[th] 1249, 1262 (2002). "Objective speciousness exists where there is a complete lack of evidence supporting [p]laintiff's claims." *Kataleuna*, 222 F.Supp.2d at 744, *quoting Computer Econ., Inc. v. Gartner Group, Inc.*, 1999 WL 33178020 (S.D. Cal. Dec. 14, 1999). "Subjective misconduct exists where a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit." *Id.* Subjective misconduct, may be inferred from the speciousness of a plaintiff's trade secret claim. *Id.* Courts applying this standard have found bad faith in exceptional situations where the trade secret claims were frivolous. *Kataleuna*, 222 F.Supp.2d at 745 (finding bad faith where plaintiff failed to identify any evidence in support of its trade secrets claims); *Degussa*, 471 F.Supp.2d at 857 (finding bad faith where plaintiff's claims were unsupported, both factually and under the law).

Here, the records requested from Dr. Morici and the University are not relevant to any bad faith inquiry because there is no circumstance in which a finding of bad faith could be made against Plaintiff.[4]  Indeed, this Court has already found that Plaintiff's trade secret claims have legal merit as evidenced by the Court's Order enjoining Defendant Bell from involvement in Defendant SeverCorr's manufacturing of, or its preparation for manufacturing, certain steels and enjoining Defendant SeverCorr from utilizing Bell's services in the manufacturing of, or its preparation for manufacturing, those steels.  (*See* Order dated March 14, 2008, p. 53, attached hereto as Exhibit D.)  Specifically, the Court has found that Plaintiff has a "possibility" of success on its claim that Defendant Bell misappropriated trade secrets and a "possibility" of success on the inevitable disclosure doctrine.  (*See* Order dated March 14, 2008, pp. 31 and 40, attached hereto as Exhibit E.) Additionally, the Court has already concluded that Defendant Bell acted in bad faith.  (*See* Order dated March 14, 2008, p. 43, attached hereto as Exhibit F.) Moreover, the record is replete with evidence on which a jury could find that Defendants' misappropriated trade secrets.  In light of the facts and law, inquiry into the motives of Plaintiff for filing its trade secret claims is not proper.  Therefore, Defendants should be precluded from conducting broad-ranging discovery, from third parties or otherwise, into Plaintiff's motive for filing its trade secret claims because such discovery is irrelevant.

### 2.    The records sought are not relevant to establish Defendants' unclean hands defense.

Defendants' argument that the records sought are relevant to its ostensible unclean hands defense also fails.  Unclean hands precludes a plaintiff from recovering in equity if it acted

---

[4] Plaintiff's claim has objective merit and thus, even under the standard utilized by courts outside the Fourth Circuit, subjective intent is not reached.  Regardless, the documents requested are not probative on the issue of how Plaintiff subjectively assessed the viability of its trade secrets claim.

unfairly in a matter that is the "subject of the litigation" to the prejudice of the defendant. *Zukowski v. Dunton*, 650 F.2d 30, 35 (4th cir. 1981) (recognizing that unclean hands must result from the "same transaction"); *Ingram v. Kasey's Associates*, 531 S.E.2d 287, 292 n. 2 (S.C. 2000); *Computer Associates International v. Bryan*, 784 F. Supp. 982, 998 (E.D.N.Y. 1992) ("doctrine of unclean hands is only applicable when the conduct relied on is directly related to the subject matter in this litigation – in this case meaning that it would have to be related to the creation or acquisition of the trade secrets themselves."). The unclean hands doctrine is one which the court applies, not for the protection of the parties, but for its own protection. *Buchanan Home and Auto Supply, Co. v. Firestone Tire and Rubber Co.*, 544 F.Supp. 242, 244 (D.S.C. 1981). The doctrine is applied when the party asserting the claim is guilty of fraud or some other act of bad faith closely related to the matter being asserted. *Id.*

The Eastern District of Virginia's decision in *Microstrategy, Inc. v. Business Objects, S.A.*, 331 F.Supp.2d 396 (E.D. Va. 2004) provides guidance on the application of the unclean hands defense in the context of a trade secrets case. In *Microstrategy*, plaintiff claimed that defendant hired away several of its employees and, as a result, gained information concerning its trade secrets. *Id.* at 400. In response, defendant raised the broad defense of unclean hands, arguing that plaintiff itself had acquired confidential documents from defendant. *Id.* at 419. The court concluded that the allegation of unclean hands did not apply to defeat plaintiff's claims because the allegations did not pertain "directly" to the events at issue in the case. *Id.* In so concluding, court explained that the "proper rule is not simply one of hypocrisy or general bad character. It is not enough to claim that the opposing party engaged in similar conduct at some point in the past." *Id.* Instead, the court explained, "the inequitable conduct must concern the actual events at issue." *Id.* Because the complained of wrongdoing was only remotely or

indirectly connected with the subject of the suit, the court determined that the defense of unclean hands did not apply. *Id.*; *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 796 (5th Cir. 1999) (finding jury determination that plaintiff had unclean hands in its efforts to protect trade secrets was unreasonable where defendant's evidence concerned plaintiff's attempts to prevent defendant from competing with it); *Emergency Care Research Institute v. Guidant Corp.*, No. 06-1898, 2007 WL 2702455, at *5 (E.D. Pa. Sept. 12, 2007) (holding evidence of "unseemly" behavior by plaintiff in trade secrets case did not rise to the level of unclean hands).

Here, Defendants apparently claim that the information requested in the subpoenas to Dr. Morici and the University is relevant to their unclean hands defense because, according to them, the records may reveal Plaintiff's alleged attempts to try to eliminate SeverCorr as a competitor in the marketplace. Defendants fail to recognize, however, that even if the records support their position that Plaintiff tried to eliminate Severcorr as a marketplace competitor in Mississippi, which is denied, such "evidence" would not rise to the level of unclean hands. First, any evidence that Plaintiff tried to maintain its market hold through legitimate means to the detriment of SeverCorr does not rise to the level of fraud or bad faith necessary to constitute unclean hands. *Buchanan*, 544 F.Supp. at 244. Second, the claimed wrongdoing does not directly concern the actual events at issue – that is, Defendants' misappropriation of trade secrets. *Ingram*, 531 S.E.2d at 292 n. 2. Rather, the claimed wrongdoing is, at best, only remotely or indirectly connected with the subject of the suit. Accordingly, because the discovery sought by Defendants through their subpoenas to Dr. Morici and the University could never bear on Defendants' unclean hands defense, the discovery is not relevant and therefore, should be denied.

## CONCLUSION

For all of the foregoing reasons, and any others considered appropriate, the Court should GRANT Nucor's Motion for Protective Order and enter an Order prohibiting the discovery

CLT 1121696v2

sought by Defendants and allowing such other and further relief as the Court may deem just and proper.

Respectfully submitted,

s/ J. Walker Coleman
J. Walker Coleman, IV
Fed. ID No. 6007
Email:  walkercoleman@parkerpoe.com
J. W. Nelson Chandler
Fed. ID No. 7593
Email: nelsonchandler@parkerpoe.com
PARKER POE ADAMS & BERNSTEIN LLP
200 Meeting Street, Suite 301
Charleston, SC  29401
Phone:  843-727-2650
Fax:  843-727-2680

*OF COUNSEL:*
William L. Rikard, Jr.
N.C. Bar No. 3701
Email:  williamrikard@parkerpoe.com
Eric D. Welsh
N.C. Bar No. 29629
Email:  ericwelsh@parkerpoe.com
PARKER POE ADAMS & BERNSTEIN LLP
Three Wachovia Center
401 South Tryon Street, Suite 3000
Charlotte, NC  28202
Phone:  704-372-9000
Fax:  704-334-4706

ATTORNEYS FOR PLAINTIFF
NUCOR CORPORATION

April 16, 2008
Charleston, South Carolina

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **NUCOR CORPORATION** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Misc. Action No. _____** |
| **v.** | ) | |
| | ) | **2:06-cv-02972-DCN** |
| **JOHN BELL and SEVERCORR, LLC** | ) | **Pending in the United States** |
| | ) | **District Court for the District of** |
| **Defendants.** | ) | **South Carolina** |

### ORDER ON NUCOR'S MOTION TO QUASH

THIS MATTER CAME BEFORE THE COURT on Plaintiff Nucor Corporation's ("Nucor") Motion to Quash third party subpoenas issued to Dr. Morici and the University of Maryland.

IT APPEARING TO THE COURT that pursuant to Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure, and for the reasons detailed in Nucor's Motion to Quash, the Court should GRANT Nucor's Motion to Quash.

IT IS, THEREFORE, ORDERED, ADJUDGED and DECREED that Nucor's Motion to Quash is GRANTED.

_____, 2008

_____
The Honorable _____
United States Magistrate Judge
District of the District of Columbia